398 So.2d 137 (1981)
Judy K. BARBEE, Plaintiff-Appellee,
v.
Bernie Olice PIGOTT, Defendant-Appellant.
No. 8132.
Court of Appeal of Louisiana, Third Circuit.
April 15, 1981.
Rehearing Denied May 28, 1981.
Michael Shannon, Alexandria, for defendant & appellant.
Kramer & Laird, Martin L. Laird, III, Alexandria, for plaintiff & appellee.
Before CULPEPPER, FORET and STOKER, JJ.
CULPEPPER, Judge.
Plaintiff seeks damages for injuries sustained as a result of being intentionally shot twice by defendant with a shotgun on October 13, 1979. Defendant answered by general denial. Thereafter, plaintiff filed a motion for summary judgment. Attached to the motion is an affidavit by plaintiff giving a detailed description of the events leading up to the shooting. The affidavit further generally describes the nature of the injuries received by plaintiff, the medical treatment which followed and her present disabled condition. Also included are several photographs of plaintiff taken soon after the shooting, along with copies of medical records and x-rays from Huey P. Long Memorial Hospital and the deposition of Dr. D. M. Kingsley, an Alexandria orthopedic surgeon.
At the hearing on the motion for summary judgment, defendant filed a motion for continuance on the grounds of pendency of criminal proceedings against him for manslaughter and attempted manslaughter stemming from the October 13, 1979 shooting. Counsel further informed the Court that defendant had entered pleas of not guilty and not guilty by reason of insanity, and that an application for appointment of *138 a sanity commission had been made, but there had not yet been a hearing regarding the defendant's capacity to proceed. Counsel further stated that defendant's Fifth Amendment privilege against compulsory self-incrimination would significantly hinder his opposition to the motion for summary judgment. The district court overruled the motion for continuance and proceeded with the hearing on summary judgment.
In opposition to the summary judgment, defendant filed an affidavit by his attorney stating the pendency of the criminal charges and that he had instructed his client to make no statement concerning the facts giving rise to the civil case or the criminal charges. No other pleadings, affidavits or other supporting documents were filed by defendant in opposition to plaintiff's motion.
Following the hearing, the district court granted summary judgment in favor of plaintiff and awarded her damages in the sum of $200,000. Defendant appealed.
On appeal, defendant urges the district court erred in allowing the civil case to proceed during the pendency of criminal charges against him. He claims his Fifth Amendment privilege against self-incrimination precluded him from adequately divulging his defenses to the civil action.
We have previously recognized the conflict of interest resulting from interrelated civil and criminal actions proceedings against the same defendant. A civil plaintiff's right to be compensated for his injuries without unreasonable delay must be weighed against the criminal defendant's rights under the Fifth Amendment. Notwithstanding the obvious complexities raised by this conflict, we have held that plaintiff's right to a civil remedy should prevail, and that the civil action need not await the finality of an interrelated criminal prosecution. State ex rel. Brasseaux v. Spell, 238 So.2d 254 (La.App. 3rd Cir. 1970), writ refused 256 La. 855, 239 So.2d 359; Bank of Commerce & Trust Company v. Prejean, 262 So.2d 798 (La.App. 3rd Cir. 1972).
A similar rule has been applied by the Federal Courts. DeVita v. Sills, 422 F.2d 1172 (3rd Cir. 1970); United States v. Simon, 373 F.2d 649 (2d Cir. 1967). In Gordon v. Federal Deposit Insurance Corporation, 427 F.2d 578 (D.C.Cir.1970), the court described this balancing of interests as follows:
"There may be cases where the requirement that a criminal defendant participate in a civil action, at peril of being denied some portions of his worldly goods, violates the concept of elementary fairness in view of the defendant's position in an interrelated criminal prosecution. On the other hand, the fact that a man is indicted cannot give him a blank check to block all civil litigation on the same or related underlying subject matter. Justice is meted out in both civil and criminal litigations. The overall interest of the court that justice be done may very well require that the compensation and remedy due a civil plaintiff should not be delayed (and possibly denied). The court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side."
Defendant contends he was faced with the difficult choice between filing opposing affidavits and running the risk of self-incrimination or invoking his Fifth Amendment privilege and possibly subjecting himself to considerable civil liability. Nevertheless, the Fifth Amendment has not been construed so broadly as to relieve defendant of the burden of this choice. United States v. Kordel, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970).
The current criminal charges pending against defendant may require several years before final disposition. We think plaintiff is entitled to pursue her civil remedies without undue delay. Thus, we do not find the refusal to grant a continuance of the civil action to be an abuse of the district court's sound discretion.
We will now consider the merits of the motion for summary judgment. LSA-C.C.P. Article 966 provides the general rule *139 that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." LSA-C.C.P. Article 967 provides for affidavits supporting or opposing a motion for summary judgment. In the recent case of Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980) our Supreme Court held that opposing affidavits are necessary only after the moving party sustains his burden of proving by supporting documents all issues of material fact necessary to support mover's case.
Applying these rules to the present case, we will examine the documents submitted by plaintiff in support of her motion for summary judgment. In an affidavit by plaintiff, she states she and her five children and another woman, Patricia Morrison, were living in a house with defendant. On the evening of October 13, 1979 she went to a movie with a Mr. Bennett. On her return, defendant approached plaintiff with a pistol and forced her into the house. There he armed himself with a shotgun and began to threaten plaintiff. Plaintiff stated that she owned a .25 automatic pistol which she had in her coat pocket at the time, but that defendant did not know this. Plaintiff decided she was going to leave the house with Mr. Bennett, who had returned. She called for the children to get dressed. At this point, defendant fired the first shot, hitting both plaintiff and Ms. Morrison, who had just entered the room. A second shot was then fired by defendant, striking plaintiff in her hip. Ms. Morrison was killed by the first shot. Plaintiff suffered severe injuries, she having been hit by both shots.
Plaintiff stated an ambulance came and took her to Huey P. Long Memorial Hospital in Pineville, where she had extensive surgery the first night. She was in the hospital nine days and then had out-patient treatment for several days.
Plaintiff states she has extensive scarring from the gunshot wounds and the surgery. Pellets from the second shot struck plaintiff directly in her left hip and exited on the left side of her back. Presently, she continues to have pain in her hip and back, and she walks with a limp. Riding in a car causes terrible pain in her hip and back.
Plaintiff also states she has a high school education and has worked in the past as a truck driver, secretary, cashier, and clothes model, among other things. She states she can no longer work because she experiences severe pain after sitting or standing for even short periods.
Attached to plaintiff's affidavit are 17 pictures of her naked body showing the terrible gunshot wounds to her chest, abdomen, left hip and back. These pictures were apparently taken in the hospital immediately after the surgery.
Also filed in support of the motion for summary judgment are the records of the Huey P. Long Memorial Hospital in Pineville. These records describe the gunshot wounds, the surgery, the hospital care and the outpatient care provided by that facility. Included are 22 x-rays and 162 pages of records of medical treatment.
Also filed in support of the motion is the deposition of Dr. Daniel M. Kingsley, an orthopedic surgeon of Alexandria, to whom plaintiff first went on January 29, 1980, complaining of pain in the left hip and drainage from a large open wound that still remained on her hip. Dr. Kingsley describes the extensive scars which he found on her chest and buttocks from the gunshot wounds and the surgery. He summarizes his findings and diagnosis as follows:
"Q Okay, sir, did you see anything significant on the x-rays?
A I certainly didshe had a tremendous injury to the left sacroiliac joint area. The joint itself was irregular, either from gunshot or from subsequent infectionabout four and a half inches of it was missing. The left side of the pubis symphysis was elevated compared to the right, and she said she did not even know *140 about that previously. The middle portion of the left sacroiliac joint was irregular and partially destroyed. The right little finger was absent through the middle point of the mid-phalanx. My diagnosis was multiple gunshot wounds of the pelvis and other areas of the body with traumatic arthritis of the left sacroiliac joint. I told her that when the bones had healed fully that I would like to do a local anesthetic infiltration of the effected joint, and if that relieved her then I would consider arthrodesis, which means stopping the joint from moving whatsoever by doing a bone graftIt's a big operation, and I told her to come back and see me in about six weeks.
Q Did she come back, doctor?
A Yes, sir. In the meantime a month after I first saw her on February 22nd., 1980, she had a fall from a standing position and sat down hard on her buttocks. She had had increased pains in the left side of her pelvis and the ilius since. I re-examined her and I took some more x-rays and I could see no new damage, and I thought she just had a sprain. I told her to use hot packs, rest, and I gave her some strong sedation. I saw her again as a follow up on April 8th, 1980, and there was no changes except x-rays showed increased healing of the bone fragmentsthe joint, sacroiliac joint is still messed up and it always will be.
Q Doctor did what you found in your x-rays, and your examination physically of herwere those findings consistent with her complaints of constant pain?
A Yes, sir.
Q To what would you attribute this pain?
A The sacroiliac joint has traumatic arthritisThat means it's irregularity due to gunshot and possibly some infection, according to the history, and it has just enough movement to be painful. It's a big jointone of the biggest in the bodyabout half of it is shot away.
Q I see. Assuming on a normal progress of this healing process that you just referred to, would you expect her to continue having pain?
A Yes, sir, that's why I suggested further examination and observation and treatment."
Plaintiff's affidavit is clearly sufficient to resolve all material fact issues as to defendant's liability. The facts set forth in the affidavit show that in a fit of anger defendant intentionally shot plaintiff twice with a shotgun at close range. There was no justification for the shooting. Thus, under Sanders v. Hercules Sheet Metal, Inc., supra, the burden shifted to defendant to present evidence showing that material facts were at issue as to liability. Defendant failed to present any opposing evidence.
As to the quantum of the award, the facts set forth above are clearly sufficient to support the award of $200,000. The burden shifted to defendant to present evidence showing any fact issues as to quantum. Defendant presented no evidence. Moreover, defendant makes no argument in his appellate brief that the award is excessive or that there are any fact issues as to the award. During oral argument before our Court, we specifically asked counsel for defendant whether he contended there are any fact issues as to the quantum of the award, and counsel for defendant responded that there are not. If plaintiff had made any argument that there is a fact issue as to the quantum of general damages, we probably would find this case inappropriate for summary judgment.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant-appellant.
AFFIRMED.
STOKER, J., concurs and assigns written reasons.
*141 STOKER, Judge, concurring.
I concur in the affirmance in this case. In cases in which the trier of fact must determine the quantum of general damages in a personal injury action, I am not convinced that judgment for a plaintiff on a motion for summary judgment is proper. The reason for my doubt is that determining quantum is a subjective consideration not subject to exact factual proof. Fixing general damages is a matter left to the sound discretion of the trier of fact, reviewable on appeal only as to abuse of discretion. Because of the very nature of quantum consideration I should think it cannot be said (in a case where quantum of general damages must be determined) that there is no genuine issue of fact. As noted in the principal opinion, this issue was raised at oral argument with defendant's counsel. I interpret counsel's response as a virtual concession or stipulation that the quantum fixed by the trial judge is correct. As neither party complains on appeal as to the quantum, they have in effect indicated that there is no genuine issue as to quantum.