577 So.2d 249 (1991)
Douglas D. GREEN, as Commissioner of Insurance for the State of Louisiana
v.
CHAMPION INSURANCE COMPANY.
consolidated with
Douglas D. GREEN, as Commissioner of Insurance for the State of Louisiana
v.
CHAMPION INSURANCE COMPANY.
consolidated with
Douglas D. GREEN, as Commissioner of Insurance for the State of Louisiana
v.
CAPITAL INSURANCE COMPANY.
Nos. CW 90 0716, CA 90 1541 and CA 90 1542.
Court of Appeal of Louisiana, First Circuit.
March 5, 1991.
Writ Denied May 24, 1991.
*251 Karl E. Boellert, Lake Charles, for defendants-appellants, Boardwalk Intern., United Financial Services of Baton Rouge, Champion Capital Corp., United Southern Underwriters, SouthEast Underwriting Service, Inc., United Southern of Tennessee, Inc., Orleans Bank, Amicom, Inc., John M. Eicher, Patricia A. King, Naaman W. Eicher, Meredith E. Eicher, Ashley A. Eicher, Tina E. Eicher, A. Freeman Edgerton and William D. Woodward.
Before LOTTINGER, CARTER and GONZALES, JJ.
LOTTINGER, Judge.
This is an action filed by the liquidator ad hoc of Champion Insurance Company (hereafter Champion) during the pendency of the liquidation proceeding of Champion requesting that the court (1) issue of an injunction against the defendants[1], (2) order an accounting from the defendants, and (3) enter a declaratory judgment on the issue of whether Champion and its affiliates constitute a "single business enterprise." From a judgment in favor of the liquidator and against the defendants, certain defendants[2] have appealed.

FACTS
On June 2, 1989, Doug Green (hereafter Commissioner), in his capacity as Commissioner of Insurance of Louisiana, filed a "Petition For Conservation And Injunctive Relief" against Champion. The petition sought to
(1) place Champion in conservation;
(2) order the surrender of all Champion records and assets to the Commissioner;

*252 (3) enjoin Champion's officers, directors and others from transacting business on behalf of Champion or from disposing of its property;
(4) stay litigation against Champion; and
(5) order an administrative hearing to be conducted by a special deputy commissioner of insurance to be appointed by the governor pursuant to the Administrative Procedures Act.
The purpose of the administrative hearing was to determine whether Champion should be placed in rehabilitation or liquidation.
Prior to this administrative hearing, Champion filed an answer admitting its insolvency and consenting to the immediate entry of an order directing the liquidation of its assets. On June 5, 1989, the court signed an order placing Champion in liquidation. This order vested the commissioner with title to Champion's property.
On June 6, 1989, the Attorney General of Louisiana filed a petition of intervention and a rule to show cause (1) why the Commissioner and the deputy commissioners should not be enjoined from acting as liquidator, and (2) why a commissioner ad hoc should not be appointed. The alleged reasons for disqualification were based on the Commissioner's personal business dealings with the Eicher family and certain Eicher entities.
In response to the allegations made in the petition filed by the Attorney General, the Commissioner filed a motion for voluntary recusal on June 9, 1989. Additionally, the Commissioner asked that a special liquidator ad hoc be appointed by the court to assume those responsibilities normally exercised by the commissioner in connection with a liquidation of a domestic insurer. The motion provided that the liquidator ad hoc is to be supervised by and is to be answerable solely to the court. On June 12, 1989, the court accepted the Commissioner's voluntary recusal and appointed the Hon. Frederick S. Ellis as liquidator ad hoc (hereafter Liquidator) of Champion upon receipt of a bond in the amount of $100,000.00. The liquidator ad hoc was vested with all powers and authority which are granted to the commissioner, as liquidator of a domestic insurer, by the provisions of La.R.S. 22:731-22:764.

CORPORATE STRUCTURE
Champion is part of the Boardwalk International, Inc. (hereafter Boardwalk) group. The following entities make up the Boardwalk Group: United Financial Services of Baton Rouge, Inc. (hereafter UFS); Champion Capital Corporation (hereafter CCC); United Southern Underwriters, Inc. (hereafter USU); South East Underwriting Service, Inc. (hereafter SEUS); Champion; and United Southern of Tennessee, Inc. (hereafter UST). John M. Eicher, Jr. (hereafter John Eicher) owned 84 percent of Boardwalk.
Boardwalk was the parent company of UFS, a premium finance company and a limited function financial institution, and CCC, an insurance holding company. Among Boardwalk's assets were 100 percent of the stock of UFS and 90 percent of the stock of CCC. CCC, in turn owned 100 percent of the stock of Champion, USU, SEUS, and UST. The latter three companies were the managing general agents of Champion and handled all of the business of Champion in Louisiana, Alabama, and Tennessee, respectively.
Other entities affiliated with the Boardwalk group include Orleans Bank (hereafter Orleans), Capital Insurance Company (hereafter Capital), and Amicom, Inc. (hereafter Amicom). Orleans is a Class B bank chartered in the Cayman Islands. This bank is presently undergoing liquidation at its domicile. Capital is a reinsurance company chartered in the Cayman Islands and is authorized to do business in Louisiana. Capital provided reinsurance and appeal bonds for Champion exclusively and is presently in conservation in this state.
All of the Orleans and Capital stock is in the names of Patricia King Eicher, Tina Estill Eicher, Meredith Eicher and Ashley Eicher. Patricia King Eicher is the wife of John Eicher. Tina Estill Eicher is the wife of Naaman W. Eicher. Naaman W. Eicher is the son of John Eicher. Meredith Eicher and Ashley Eicher are the daughters of *253 John Eicher. Amicom is a Louisiana corporation that is owned by Naaman, Meredith, and Ashley Eicher.
John Eicher was president of Boardwalk, UFS, USU, SEUS, UST, and Orleans. Donald McCulloch, who was in charge of the accounting department at Champion, was treasurer of all the companies except Orleans and Amicom. The president of Champion and CCC was A. Freeman Edgerton. Naaman Eicher was president of Amicom, and Tina Eicher was president of Capital. Patricia Eicher was secretary of all of the corporations except Amicom and Boardwalk. See appendix for a chart detailing the ownership, officers, and directors as described herein. Testimony as to the accuracy of this chart was given by Donald McCulloch and Brian Stagg, the Liquidator's accountant.
All of the records of Champion and the affiliated companies, including those pertaining to accounting, policies, and claims were kept in a large computer at the main office in Baton Rouge. Champion, UFS, and USU maintained common offices in the main office. Champion had no employees. All of Champion's business was carried on by its three managing general agents; USU, SEUS, and UST. Employees were used interchangeably by Champion and the affiliated companies as the need arose.

LIQUIDATION PROCEEDINGS
Pursuant to the provisions of La.R.S. 22:731-22:764, it is the duty of the liquidator of an insolvent insurer to identify, gather, and liquidate the assets of the company, and to use those assets to satisfy debts. The liquidator is usually given full access to the records of the company. Additionally, he has the assistance of the insurer's executive officers and other personnel in ascertaining the status of the company. The Champion liquidator was denied any such assistance or cooperation. Attempts to gain access to missing documents and to obtain an accounting from various responsible Champion executives were unsuccessful.
Due to this lack of cooperation, the Liquidator filed a "Petition For An Injunction And An Accounting" on July 31, 1989. In this petition the Liquidator alleged that (1) the twelve individual defendants[3] were officers or directors of Champion; (2) the assets of Champion and the nine defendant corporations[4] had been commingled on a recurring basis; (3) numerous, regular and material intercompany transactions had occurred among Champion and the defendants; and (4) Champion and the corporate defendants had been operated as a "single business enterprise." The Liquidator asked that the court order each defendant to provide an accounting to the court and to the Liquidator of all material transactions between and among each defendant and Champion occurring from June 5, 1987, until the date the accounting is submitted. Pending the submission of the accounting, the Liquidator asked the court to issue a preliminary writ of injunction in the form and substance of the permanent injunction to prohibit the defendants from transferring, alienating, encumbering, or otherwise disposing the assets of Champion and its affiliates. This matter was scheduled for hearing on August 10, 1989.
A motion to continue the August 10, 1989 hearing was filed by the defendants due to the illness of their attorney. Judge Moreau of the 19th Judicial District Court granted a continuance of this matter without date because of the unavailability of defendants' lead counsel. However, Judge Keogh of the 19th Judicial District Court issued a preliminary injunction against all defendants to prevent the transfer, alienation, encumbrance and disposition of the *254 assets of Champion and its affiliates pending the submission of an accounting. This order further prevented the individual defendants from spending their own funds in excess of $10,000 without court approval. Defendants notified the court of their intention to apply for writs as to the injunction. The court granted them 14 days within which to apply for writs; however, the defendants failed to seek appellate relief thereby permitting the injunction to remain in effect.
On September 25, 1989, the Liquidator amended his petition for injunction and accounting to include a demand for declaratory judgment that Champion and the corporate defendants constitute a "single business enterprise." Such a judgment would entitle the Liquidator to assert dominion and control over the assets of each such defendant and to utilize their assets as the assets of Champion.
Prior to the filing of the Liquidator's amended petition, on August 8, 1989, Hon. Joseph F. Keogh, Judge of Division "M" of the Nineteenth Judicial District, recused himself from hearing the issue of whether Champion and the corporate defendants constituted a "single business enterprise." This recusation order was entered because Judge Keogh had announced, at a June 27, 1989, hearing, his intention to treat Champion and the defendant corporations as one entity. On August 10, 1989, Judge Keogh issued an order rescinding this recusation order because the local rules of the Nineteenth Judicial District Court did not provide for a judge's recusal for one issue in a case. Instead, the Hon. Douglas "Doug" Moreau agreed informally to hear and decide the issues raised in the Liquidator's "Petition For An Injunction And For An Accounting," and Judge Keogh retained control over all other aspects and issues of this case.
The trial lasted for five daysJanuary 11, 12, 16, 23 and 24, 1990. The defendants, Donald McCulloch, Raymon Nolan, and William D. Woodward, were represented by counsel. The remaining defendants were not represented due to their inability or lack of realistic effort to obtain counsel. Naaman Eicher handled the case of his family and the affiliated corporations. None of the Eicher defendants were called to testify by the Liquidator, and none chose to testify.
After the trial, on January 26, 1990, Judge Moreau entered judgment in favor of the Liquidator. The trial judge ordered an accounting, issued a permanent injunction, and declared that the corporate defendants constituted a "single business enterprise." From this judgment, several defendants [5] have filed a suspensive appeal and, alternatively, a devolutive appeal. The defendants' motion for suspensive appeal was granted and bond was set at $10,000,000.00 at the suggestion of the Liquidator. The defendants then filed a motion to reduce the bond[6] to a cost bond which was denied by the trial court. After this court refused writs, the supreme court issued an order for this court to give an expedited hearing as to all matters raised by various writ applications and this devolutive appeal.
ASSIGNMENTS OF ERROR
1. The trial court unlawfully assumed an executive prerogative by appointing its own candidate, rather than a candidate chosen by the executive branch of the government, to serve as liquidator ad hoc in the Champion liquidation.
2. The trial court erred in rendering an executable judgment declaring the corporate defendants to constitute a single business enterprise and placing the liquidator ad hoc in possession of appellants' property.

*255 3. Judge Keogh erred in granting preliminary and permanent injunctions against the use or disposition of applicants' assets without a prior evidentiary hearing; without regard to constitutional "due process" considerations; and without compliance with procedural requirements set out in the Louisiana Code of Civil Procedure.
4. The court erred in refusing to permit the defendants to use their assets to engage counsel; to defray the costs and expenses necessary to defend themselves in these proceedings; and to enter and prosecute an appeal from an adverse judgment.
5. Considering the injunctive assets freeze, the court erred in acceding to plaintiff's request that the suspensive appeal bond be fixed at $10,000,000 and denying appellants' motion to reduce the bond to an affordable level in accordance with law (for payment of court costs only).
6. The court did not have the jurisdiction and the liquidator did not have the authority to consider or adjudicate summary or ordinary claims not directly related to the liquidation of Champion.
7. The court erred in overruling exceptions of improper venue with respect to defendants who are not domiciled in East Baton Rouge Parish.
8. The court erred in overruling appellants' exceptions pertaining to the improper cumulation of actions and parties and pertaining to the violations of its own random allotment rules.
9. The court erred in imposing sanctions on William D. Woodward for his failure to produce certain documents, when said documents had never been requested in writing and no written order had been issued compelling the production of said documents.
10. The court erred in refusing to stay the civil proceeding pending a resolution of the criminal indictments and prosecution of the individual defendants and appellants.

COURT APPOINTMENT OF A LIQUIDATOR AD HOC
The appellants contend that the trial court unlawfully assumed an executive prerogative by appointing a liquidator ad hoc of Champion. Since the commissioner of insurance is a member of the executive branch of government, the appellants argue that the governor has the power to appoint the liquidator ad hoc of Champion rather than the court. We need not reach the level of deciding whether there was an unconstitutional exercise of power belonging to another branch of government.
The duties and powers of the commissioner of insurance are established as set forth in La. Const. art. IV, § 11.[7] As part of the statutory scheme which governs the commissioner's duties, the legislature has enacted laws that establish the procedures by which a domestic insurer is to be liquidated. La.R.S. 22:731-22:764. The appellants argue that the insurance code mandates that the commissioner shall act as the liquidator. The only mandate established by the legislature with respect to the commissioner in regards to the liquidation of insurers is found in La.R.S. 22:733 and 22:742. These provisions state that the commissioner in his position as regulator is the proper person to petition the court for a rule to show cause why an order of liquidation should not be entered. Although the commissioner's duty to act as liquidator can be inferred from language found in La.R.S. 22:734 and 22:737, this language does not expressly mandate that the commissioner serve as liquidator of domestic insurers in all cases.
The legislature has simply expressed a preference or priority with respect to the appointment of a liquidator of a domestic insurer. Similar preferences have been established by the legislature with respect to probate and succession matters. The legislature's *256 designation of such preference and priority does not mandate the appointment of the commissioner, a member of the insurance department, or any other member of the executive branch of government. The court in its traditional role as appointer of liquidators[8] is free to utilize those preferences that have been established by the legislature in determining who will be appointed liquidator. No one questions the authority of the district court to appoint a liquidator of a corporation or a partnership.
In this proceeding, the Commissioner filed a "Petition For Conservation And Injunctive Relief" against Champion as required by La.R.S. 22:733 and 22:742. Subsequently, the Commissioner voluntarily recused himself in response to a motion filed by the Attorney General. The statutory scheme discussed above provides a preference that the commissioner serve as the liquidator of insurers. The scheme does not establish a preference for those instances in which the commissioner is unable to act as liquidator, i.e. voluntary recusal. Therefore, the court was unable to look to a statutory preference for guidance in appointing the Champion liquidator. Absent a preference, and even more, the recusal by the Commissioner, the court properly proceeded with the appointment of a liquidator.

SINGLE BUSINESS ENTERPRISE
The defendants contend that the trial court erred in rendering an executable judgment declaring the corporate defendants to constitute a single business enterprise ("SBE") and placing the liquidator ad hoc in possession of appellants' property.

I. NATURE OF THE "SBE" JUDGMENT
The plaintiff in his amended petition asked that the trial court render a declaratory judgment that these affiliated entities constitute a "single business enterprise." The appellants complain that the trial court disregarded the provision of the Declaratory Judgment Act (La.Code Civ.P. arts. 1871-1883) when it entered an executable judgment rather than simply declaring that the affiliated entities constituted a "single business enterprise." The pertinent language in the judgment provided that the affiliated entities:
constituted prior to, as of and subsequent to June 5, 1989, a "single business enterprise" and the Liquidator shall and hereby is vested with and is entitled and authorized to assert complete and exclusive control, dominion and ownership over all books, records, assets and properties of each ... [affiliated entity] and to utilize the same as the assets and properties of Champion Insurance Company for purposes of this liquidation proceeding.
The appellants content that the trial court's judgment was executable in the sense that the Liquidator may seek its enforcement through appropriate writs issued to the sheriff.
We are of the opinion that the trial court judgment is in conformity with the La.Code of Civil Procedure. La.Code Civ.P. art. 1871 provides that a court "may declare rights, status, and other legal relations." The trial court simply declared that the affiliated entities constituted a "single business enterprise." Pursuant to the Insurance Code (La.R.S. 22:735), such a finding automatically vests the Liquidator with ownership of the property belonging to this "single business enterprise" for purposes of this liquidation. Therefore, the trial court's judgment did not vest the Liquidator with powers that he did not already have. The judgment simply declared the *257 rights of the Liquidator as provided for in the law.

II. "SBE" DETERMINATION
The trial court declared that Boardwalk, UFS, CCC, USU, SEUS, UST, Orleans, Amicom, and Champion (hereafter "affiliated entities") constituted a "single business enterprise." Whether an affiliated group of entities constitutes a "single business enterprise" is a question of fact to be decided by the trial court. Talen's Landing, Inc. v. M/V Venture, II, 656 F.2d 1157, 1160 (5th Cir.1981). The appellants correctly point out that the standard of review as to this issue is manifest error or clearly wrong.
Louisiana's corporation laws are similar to the corporation laws of other states. Corporations are recognized as a separate entity for various reasons. However, the legal fiction of a distinct corporate entity may be disregarded when a corporation is so organized and controlled as to make it merely an instrumentality or adjunct of another corporation. If one corporation is wholly under the control of another, the fact that it is a separate entity does not relieve the latter from liability. Lucey Manufacturing Corporation v. Oil City Iron Works, 15 La.App. 12, 131 So. 57 (La.App. 2nd Cir.1930). In such instance, the former corporation is merely an alter ego or a business conduit of the latter. When corporations represent precisely the same single interest, the court is free to disregard their separate corporate identity. See, Brown v. Benton Creosoting Company, 147 So.2d 89, 94 (La.App. 2nd Cir.1962), citing 13 Am.Jur., Corporations, § 7; 1 Fletcher Cyclopedia Corporations, § 41 (1931).
It is clear that courts can pierce the veil of a corporation in order to reach the "alter egos" of the corporate defendant. This is especially true where the corporations constitute a single business. Courts have been unwilling to allow affiliated corporations that are not directly involved to escape liability simply because of the business fragmentation. See, Lucey Manufacturing Corporation v. Oil City Iron Works, 131 So. at 61. Where a single corporation has been fragmented into branches that are separately incorporated and are managed by a dominant or parent entity, or have interlocking directorates, the courts have held the dominant or parent corporation liable for the obligations of its branches whenever justice requires protection of the rights of third persons. Johnson v. Kinchen, 160 So.2d 296, 298 (La.App. 1st Cir.1964).
In addition to using a "piercing the veil" theory to disregard a corporate identity, some courts have utilized the "single business enterprise" or "instrumentality" theory to extend liability beyond a separate entity. Prior Louisiana jurisprudence deals primarily with piercing of the corporate veil to hold a parent corporation solidary liable for the debts of its subsidiary. The trial court in this case utilized the "single business enterprise" theory to disregard the identities of a group of separate corporations. Such a situation has not been specifically addressed by our courts.
When determining whether a corporation is an alter ego, agent, tool or instrumentality of another corporation, the court is required to look to the substance of the corporate structure rather than its form. The following factors have been used to support an argument that a group of entities constitute a "single business enterprise":
1. corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control;
2. common directors or officers;
3. unified administrative control of corporations whose business functions are similar or supplementary;
4. directors and officers of one corporation act independently in the interest of that corporation;
5. corporation financing another corporation;
6. inadequate capitalization ("thin incorporation");
7. corporation causing the incorporation of another affiliated corporation;

*258 8. corporation paying the salaries and other expenses or losses of another corporation;
9. receiving no business other than that given to it by its affiliated corporations;
10. corporation using the property of another corporation as its own;
11. noncompliance with corporate formalities;
12. common employees;
13. services rendered by the employees of one corporation on behalf of another corporation;
14. common offices;
15. centralized accounting;
16. undocumented transfers of funds between corporations;
17. unclear allocation of profits and losses between corporations; and
18. excessive fragmentation of a single enterprise into separate corporations.
These factors are similar to factors that have been used in Louisiana "piercing the veil" cases. This list is illustrative and is not intended as an exhaustive list of relevant factors. No one factor is dispositive of the issue of "single business enterprise." See, Baker v. Raymond International, Inc., 656 F.2d 173, 180 (5th Cir. 1981), cert. denied, 456 U.S. 983, 102 S.Ct. 2256, 72 L.Ed.2d 861 (1982); Glenn v. Wagner, 67 N.C.App. 563, 313 S.E.2d 832, 839 (1984), reversed on other grounds, 313 N.C. 450, 329 S.E.2d 326 (1985); Paramount Petroleum Corporation v. Taylor Rental Center, 712 S.W.2d 534, 536 (Tex.App.Ct. 14th Dist.1986).
Considering the above factors, we find the present record contains evidence sufficient to justify the trial court's finding that the affiliated entities operated as a single business enterprise. John Eicher, Naaman Eicher and members of their immediate family were the controlling shareholders of all of the corporations. The directors and officers of the various corporations were the same persons in varying capacities. John and Naaman Eicher dominated the affairs of all of the corporations.
In several instances, one of the corporations would entered into transactions with out economic justification. Directors did not act independent and in the primary interest of the particular entity. Such transactions were entered into solely for the benefit of another member in the group. There was a tremendous amount of intercompany debt due to the lack of adequate initial capitalization. These corporations were financed primarily through intercompany debt among members of the group. The financial viability of each corporation was dependent on its ability to collect receivables from other members of the group.
Common employees existed among this group. USU had most of the employees while Champion had none. Some employees were compensated by more than one member of the group. The employees of the group performed services without regard to which of the corporations provided their remuneration. Some corporations received the services of these employees without having to compensate them.
The corporations received virtually no business other than that given to it by members of the group. Substantial intercompany debt was created to enable other corporations or individuals to use the assets of one corporation to make purchases or invest in one of the other corporations. Cash would leave one corporation and flow through a series of other corporations or individuals within a short period of time thereby creating assets or capital on the books of those involved. These funds would ultimately be returned to the initial corporation in the lending cycle. Corporate formalities were not observed with respect to annual shareholder meetings, formal board meetings, and corporate authorization for major transactions.
Most of the entities were operated out of one office located in Baton Rouge. Most accounting was performed at the Baton Rouge office under the direction of Mr. McCulloch. Activities between members of the group were not properly reflected on the books of these corporations. Documentation of many of these transfers was inadequate. Many of the transactions entered into between corporations in this group *259 were not conducted at arm's length. Funds were transferred without obtaining proper collateralization and without a repayment schedule. Interest on a number of intercompany transactions was not recorded or paid on a regular and recurring basis. Value of in-kind services were not recorded. Professional fees incurred by one corporation were paid for and expensed on the books of another corporation. Costs for the construction of a shareholder's home was buried in Champion books as part of the cost of constructing Champion's office building. In many material respects, there was no clear allocation of profits and losses as evidenced by the existence of a sweep account[9].
In terms of structure, finance, and operations, this evidence demonstrates that the corporations were not operated as separate entities. They functioned as a single economic entity despite the internal compartmentalization of ownership and operation by means of separate incorporation. The doctrine of separate legal entity may not properly be interposed to conceal the true relation between the corporations. Therefore, we find that the trial court was correct in applying the single business enterprise theory in this case.

III. EFFECT OF THE "SBE" DETERMINATION
In Glenn v. Wagner, 313 S.E.2d at 844, the court held that a group of affiliated corporations constituted a "single business enterprise" since each separate corporation was simply a fragment of a single enterprise. Upon finding that a group of corporations constitute a "single business enterprise," the court may disregard the concept of corporate separateness to extend liability to each of the affiliated corporations to prevent fraud or to achieve equity.
The extension of liability for a corporation's obligations beyond the confines of its own separate entity is appropriate in those cases where an essentially single business or economic enterprise is nevertheless conducted through several separate corporations, either in a parent-subsidiary arrangement or under common ownership as in the case of affiliated corporations. See Latty, supra, Subsidiaries and Affiliated Corporations, Chap. VIII [1936].
Such a division or fragmentation may take the form of a traditional parent-subsidiary relationship or that of a single individual or group of individuals owning directly the stock of various corporations which go to make up the single business enterprise. Latty, supra. Upon disregard of the separate entity of one of the corporate components, the rights of a creditor of that corporation would be as great against an affiliate with substantial identity of stock interest as against a parent which owns substantially all the stock of a subsidiary. The extent of recovery, however, would properly be limited to the pool of assets of the larger business entity.
313 S.E.2d at 844.
When a group of corporations integrate their resources to achieve a common business purpose and do not operate as a separate entity, each affiliated corporation may be held liable for debts incurred in pursuit of its business purpose. Paramount Petroleum Corporation v. Taylor Rental Center, 712 S.W.2d at 536.
The Eichers established the corporate defendants to enable them to engage in the business of selling and financing insurance. Insurance companies are highly regulated by the Insurance Code. The Insurance Code specifically provides for the liquidation of assets belonging to the insurance company. Upon finding that the corporate defendants constitute a "single business enterprise," the assets of each of the affiliated corporations are pooled together to satisfy the claims of their creditors. The trial court's judgment does not allow the Liquidator to regulate the non-insurer corporations. The court is simply allowing the Liquidator to gather the assets that are properly includable in the liquidation. His *260 rights and duties with respect to the use of the assets of the "single business enterprise" in the liquidation of Champion is specifically provided for in La.R.S. 22:737.
The appellants contend that the trial court judgment is inequitable since it does not provide relief to the creditors of Champion affiliates. Glenn v. Wagner discusses the right of the creditors of the affiliated corporations. These creditors are entitled to assert the same rights they had against the debtor corporation against the "single business enterprise"; however, the extent of recovery would properly be limited to the pool of assets of the larger business entity. The priority by which the creditors of this "single business enterprise" are to be paid is governed by the Insurance Code for purposes of this liquidation.

ORDER GRANTING INJUNCTION
The appellants contend that Judge Keogh erred in granting a preliminary and a permanent injunction thereby enjoining the appellants from using or disposing of their assets without a prior evidentiary hearing; without regard to constitutional "due process" considerations; and without compliance with procedural requirements set out in the Louisiana Code of Civil Procedure. Since the August 10, 1989 preliminary injunction was issued without notice, without proper proof, and without the security required by law, the appellants contend that its issuance was improper.
Upon the court's entering of the order of injunction on August 10, 1989, the defendants notified the court of their intention to apply for writs of certiorari. They were granted fourteen days within which to do so. However, no such application was made by the defendants. Therefore, this preliminary injunction remained in effect until the January, 1990 trial on the merits.
The defendants could have taken writs within the fourteen days provided for by the trial court. They were given the opportunity to have the trial court's issuance of the injunction reviewed by a higher court. However, they consciously decided not to take the necessary action.
At the subsequent trial on the Liquidator's petition for injunction and an accounting, the trial judge replaced the preliminary injunction with a permanent injunction. Assuming, for the sake of argument, that the defendants did have a due process claim, any procedural errors made by the trial court have been cured by the subsequent entering of a permanent injunction after a trial on the merits. In light of this judgment, the defendants' objections to the lack of an evidentiary hearing and lack of security are now moot.

SUSPENSIVE APPEAL BOND
The defendants contend that the trial court erred in fixing the suspensive appeal bond at $10,000,000 in light of the injunctive freeze on their assets. The defendants argue that the amount of the bond is excessive; therefore, they are deprived of their right to a suspensive appeal. Assuming that the trial court erred in setting the appeal bond at $10,000,000, such error was harmless in light this court's decision to affirm the trial court's judgment.

EXCEPTIONS OF JURISDICTION, IMPROPER VENUE AND IMPROPER CUMULATION OF ACTIONS

I. JURISDICTION
The appellants challenge the extent to which the insurance code grants district courts jurisdiction over persons other than the officers, agents, directors, and employees of the insurer. La.R.S. 22:734 authorizes the court to issue an injunction restraining "such insurer and its officers, agents, directors, employees and all other persons from transacting any insurance business or disposing of its property."
The term "all other persons" is intentionally broad so as to give the court the necessary latitude in issuing such orders as the facts and circumstances of a particular case may justify. If the legislature had intended to limit the court's authority to issuing injunctions only against officers, agents, directors, and employees of an insurer, there would have been little need to include the phrase "all other persons."
*261 Furthermore, La.R.S. 22:734 provides that the court may issue such other injunctions or enter such other orders as may be deemed necessary. These provisions in no way limit the authority of the court to issue injunctions only to officers, agents, directors, and employees of the insurer. The court's jurisdiction under La.R.S. 22:734 extends to other persons or entities who may have access, control, or possession of the insurer's assets.

II. IMPROPER VENUE
The defendants content that the court erred in overruling their exception of improper venue with respect to defendants who are not domiciled in East Baton Rouge Parish. Mr. Woodward filed a declinatory exception of improper venue on September 11, 1989. This assignment is without merit as a result of the general appearance made by all defendants, including Mr. Woodward, by filing an "Ex Parte Motion For Continuance" on August 10, 1989. The motion for a continuance was filed on the day of the hearing to determine whether the preliminary injunction should be issued because of the illness of the defendants' attorney and was aimed solely at postponing the hearing. Therefore, the filing of this motion for continuance constituted a general appearance which waived any objection Mr. Woodward may have had to the venue. See, Karno v. Louisiana Tax Commission, 233 So.2d 592, 596 (La.App. 4th Cir.), writ refused, 256 La. 251, 236 So.2d 30 (1970); Gulf South Research Institute v. Bramlet, 240 So.2d 421, 425 (La.App. 3rd Cir.), writ not considered, 257 La. 173, 241 So.2d 531 (1970).

III. IMPROPER CUMULATION OF ACTIONS
The appellants contend that the court erred in overruling appellants' exceptions pertaining to the improper cumulation of actions and parties and pertaining to the violations of its own random allotment rules.
Improper cumulation of actions is a dilatory exception that must be pleaded prior to answer or default judgment. La. Code Civ.P. arts. 926 and 928. Assuming that these actions have been cumulated, any right the defendants may have had to question the cumulation has been waived as a result of the defendants' failure to timely raise it. McPherson v. Roy, 390 So.2d 543, 546-547 (La.App. 3rd Cir.1980), writ denied, 396 So.2d 910 (1981).
The defendants also raise for the first time in this appeal the trial court's failure to follow Rule III of the Local Rules of the Nineteenth Judicial District. Rule III requires that a newly filed suit be allotted to a division of the court by a mechanical or electronic device or lottery to assure an equal assignment by chance. However, this rule provides an exception for those suits which grow "out of suits or proceedings previously pending."
Absent the existence of a pending liquidation proceeding, there would have been no need or cause for the Liquidator to seek such relief. Liberal construction of the "grows-out-of" exception contained in Rule III supports a finding that the petition filed by the Liquidator was an outgrowth of the Champion liquidation. Furthermore, La. R.S. 22:734 grants Judge Keogh, who is handling the liquidation of Champion, the authority to issue an injunction and such other orders as may be necessary in the liquidation proceeding. Therefore, the local rule dealing with random allotment has not been violated.

SANCTIONS IMPOSED ON WILLIAM WOODWARD
The defendants contend that the court erred in imposing sanctions on William D. Woodward for his failure to produce certain documents that were never requested in writing. Furthermore, a written order had not been issued compelling the production of said documents.
Mr. Woodward, the appellant, has the burden of proving that the trial court's imposition of sanctions was in error; therefore, he has the burden of having the record pertaining to this issue submitted for appellate review as set forth in La.Code Civ.P. arts. 2130-2131. It is his responsibility *262 to make sure that a complete record is before the court of appeal. Hanley v. Hanley, 381 So.2d 963 (La.App. 4th Cir.), writ denied, 383 So.2d 783 (1980). Due to the inadequacy of the record on appeal, it is necessary for this court to assume that the trial court's judgment awarding sanctions against Mr. Woodward was supported by sufficient evidence and was correct.

STAY OF CIVIL PROCEEDINGS
Lastly, the appellants contend that the court erred in refusing to stay the civil proceedings pending the resolution of the criminal indictments and prosecutions of the individual defendants.
On October 25, 1989, a majority of the defendants filed a motion for stay and protective order. This motion was denied on November 2, 1989. On January 8, 1990, Patricia King Eicher filed another motion for stay. The trial court again denied this motion. On January 11, 1990, writs were denied by this court. The supreme court also denied writs on the ground of prematurity.
The defendants argue that a stay of the civil proceedings was necessary to protect their constitutional right against self incrimination. Additionally, they claim that the court's refusal to grant a stay precluded them from adequately defending themselves in this civil action.
Courts have discretion in deciding whether to grant a motion to stay. The trial court may deny a stay request where the defendant fails to demonstrate sufficient prejudice to support such a drastic measure. Favaloro v. S/S Golden Gate, 687 F.Supp. 475, 478 (N.D.Cal.1987). The trial court's decision to deny the defendants' motion for stay will not be interfered with unless this court finds that there has been an abuse of discretion. Bank of Commerce and Trust Company v. Prejean, 262 So.2d 798 (La.App. 3rd Cir. 1972).
Louisiana courts recognize that a conflict of interest results when interrelated civil and criminal actions have been filed against the same defendants. A plaintiff has a right to a trial.[10] A denial of the plaintiff's right to a trial without undue delay amounts to a denial of due process of law. On the other hand, the defendant may be in a position where he needs to assert his constitutional right to avoid self incrimination. Bank of Commerce and Trust Company v. Prejean, 262 So.2d at 799. The court must weigh the civil plaintiff's constitutional right to be compensated without unreasonable delay against the criminal defendant's rights under the Fifth Amendment. Notwithstanding the obvious complexities raised by this conflict, Louisiana courts have held that a plaintiff's right to a civil remedy should prevail. Therefore, a civil action need not await the finality of an interrelated criminal prosecution. Barbee v. Pigott, 398 So.2d 137, 138 (La. App. 3rd Cir.1981).
A similar rule was applied by a federal court in Gordon v. Federal Deposit Insurance Corporation, 427 F.2d. 578, 580 (D.C. Cir.1970). The court has an interest in seeing that justice is done. This interest does not require that the courts halt all civil litigation until final disposition of the related criminal prosecutions.
[T]he fact that a man is indicted cannot give him a blank check to block all civil litigation on the same or related underlying subject matter. Justice is meted out in both civil and criminal litigation. The overall interest of the courts that justice be done may very well require that the compensation and remedy due a civil plaintiff should not be delayed (and possibly denied). The court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side.
427 F.2d at 580.
Where a defendant fears incrimination, he may choose not to testify in the civil case. The defendants' Fifth Amendment right against self incrimination does *263 not afford them with a constitutional right that relieves them of the burden of choosing whether or not to testify in this civil case. Barbee v. Pigott, 398 So.2d at 138.
This court recognizes that the individual defendants in this civil proceeding were faced with an inherent conflict since they were also the subjects of criminal proceedings. However, those conflicts did not warrant the granting of a stay in this case. To require the Liquidator to await the finality of the criminal proceedings makes his civil remedy inadequate if not non-existent.
The trial court granted several continuances as per the defendants' request. At no time during the trial did the defendants assert their Fifth Amendment privilege. They were not called to testify by the plaintiff. Furthermore, the defendants made a conscious decision not to avail themselves of the opportunity to testify on their own behalf.
Under the facts in this case, we find that the Liquidator was entitled to proceed with the liquidation of Champion without undue delay. Furthermore, we find that the trial court did not abuse its discretion in denying the defendants' motion for stay.

DECREE
Therefore, for the above and foregoing reasons the judgment of the trial court is affirmed at defendants-appellants' costs.
AFFIRMED.
NOTES
[1] The following are defendants in this suit:

John M. Eicher, Jr., Patricia A. King, Naaman W. Eicher, Meredith Elayn Eicher, Ashley A. Eicher, Tina Estill Eicher, Donald C. McCulloch, A. Freeman Edgerton, Gary C. Ethridge, Ramon Nolan, William D. Woodward, Alvin S. Rousse, Boardwalk International, Inc., United Financial Services of Baton Rouge, Inc., Champion Capital Corporation, United Southern Underwriters, Inc., South East Underwriting Service, Inc., United Southern of Tennessee, Inc., Capital Insurance Company, Inc., Orleans Bank, and Amicom, Inc.
[2] The following defendants have appealed:

John M. Eicher; Patricia A. King; Meredith E. Eicher; Ashley A. Eicher; William D. Woodward; Boardwalk International, Inc.; United Financial Services of Baton Rouge, Inc.; Champion Capital Corporation; United Southern Underwriters, Inc.; South East Underwriting Service, Inc.; United Southern of Tennessee, Inc.; and Orleans Bank.
[3] The twelve individual defendants are:

John M. Eicher, Jr., Patricia A. King, Naaman W. Eicher, Meredith Elayn Eicher, Ashley A. Eicher, Tina Estill Eicher, Donald C. McCulloch, A. Freeman Edgerton, Gary C. Ethridge, Ramon Nolan, William D. Woodward, and Alvin S. Rousse.
[4] The nine corporate defendants are:

Boardwalk International, Inc., United Financial Services of Baton Rouge, Inc., Champion Capital Corporation, United Southern Underwriters, Inc., South East Underwriting Service, Inc., United Southern of Tennessee, Inc., Capital Insurance Company, Inc., Orleans Bank, and Amicom, Inc.
[5] All of the defendants have appealed except Naaman Eicher, Tina Eicher, A. Freeman Edgerton, and Amicom, Inc. Naaman Eicher, Tina Eicher and Amicom, Inc. dismissed their appeal subsequent to the filing. Additionally, A. Freeman Edgerton indicated in a hearing before the district court that he has not appealed and has not authorized Karl Boellert, counsel for the appellants, to file an appeal on his behalf.
[6] The record does not include the pleadings or minute entries pertaining to the motion to reduce bond.
[7] La. Const. art. IV, § 11 provides:

There shall be a Department of Insurance, headed by the commissioner of insurance. The department shall exercise such functions and the commissioner shall have powers and perform duties authorized by this Constitution or provided by law.
[8] La. Const. art. V, § 16(A), as it existed at the time of the trial, provided:

Except as otherwise authorized by this constitution, a district court shall have original jurisdiction of all civil and criminal matters. It shall have exclusive original jurisdiction of felony cases and of cases involving title to immovable property; the right to office or other public position; civil or political rights; probate and succession matters; the state, a political corporation, or political subdivisions, or a succession, as a defendant; and the appointment of receivers or liquidators for corporation or partnerships, (emphasis added)
[9] The account balances of UFS, SEUS, USU, AND UST were swept into a sweep account at the end of each working day. This sweep account was maintained by Champion.
[10] La. Const. art. I, § 22 provides:

All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality or unreasonable delay, for injury to him in his person, property, reputation or other rights.