968 So.2d 736 (2007)
Ann Lee Stephens SARPY, Elizabeth Stephens Knowles, Martha Stephens Johnson and Mary Stephens Dillon
v.
ESAD, INC., The 1927 Partnership, Preferred Hotel Holdings, Ltd., Bn Investments II, Ltd., Pledged Holding Company, Inc., and George J. Newton, III.
No. 2007-CA-0347.
Court of Appeal of Louisiana, Fourth Circuit.
September 19, 2007.
James R. Swanson, Loretta G. Mince, Lance C. McCardle, Correro Fishman Haygood Phelps Walmsley & Casteix, L.L.P., New Orleans, LA, for Plaintiffs/Appellants.
James M. Garner, Timothy B. Francis, Neal J. Kling, Christopher C. Chocheles, Sher Garner Cahill Richter Klein & Hilbert, L.L.C., New Orleans, LA, for Defendant/Appellee.
(Court Composed of Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS, JR., and Judge ROLAND L. BELSOME).
MAX N. TOBIAS, JR., Judge.
The plaintiffs, Ann Lee Stephens Sarpy, Elizabeth Stephens Knowles, Martha Stephens Johnson, and Mary Stephens Dillon (collectively hereinafter referred to as "the plaintiffs") appeal from the granting of a motion for summary judgment in favor of the defendants, The 1927 Partnership (hereinafter "1927"), Preferred Hotel Holdings, Ltd. (hereinafter "Preferred"), BN Investments II, Ltd.(hereinafter "BNI"), and Pledged Holding Company, Inc.(hereinafter "Pledged") (collectively hereinafter referred to as "the non-ESAD defendants"). After reviewing the record and applicable law, we reverse the trial court's decision granting the summary *737 judgment and remand the matter to the trial court for further proceedings.
From 1992 through 2004, the defendant, ESAD, Inc. (hereinafter "ESAD"), subleased the Eiffel Tower Restaurant building (hereinafter "the Tower") on St. Charles Avenue in New Orleans from the plaintiffs who co-owned a long-term leasehold interest in the Tower. ESAD was formed by David Burrus and the defendant, George Newton, III, for the purpose of purchasing the subleasehold interest in the Tower. Burrus and Newton also owned the Pontchartrain Hotel (hereinafter "the Pontchartrain"), which is located across the street from the Tower.
The Pontchartrain is owned by defendant, 1927, which is composed of three partners: Preferred, BNI, and Pledged. Preferred, BNI, and Pledged are each owned by Burrus and Newton in respective percentages of 75% and 25%. ESAD's stock is also owned by Burrus and Newton in the same respective percentages of 75% and 25%, through an intermediary corporation, FIG, Inc. ("FIG").[1]
Christopher Schott serves as the registered agent, director, and secretary/treasurer of ESAD, FIG, Preferred, BNI, and Pledged. He also serves as a member of the partnership management committee of 1927.
The owners of the Pontchartrain acquired the leasehold in the Tower. FIG originally intended to purchase the leasehold, but at the very last moment, the non-ESAD defendants created ESAD for the sole purpose of acquiring the leasehold interest. At the time of incorporation, FIG contributed $100.00 of paid-in capital to acquire ESAD's stock, despite the fact that the leasehold interest was worth several hundred thousand dollars.
From 1992-2004, the owners of the Pontchartrain owned and controlled the leasehold interest in the Tower. The evidence shows that ESAD carried receivables on its books due from 1927, Preferred, BNI, and Pledged, which exceeded $300,000.00 for five years in a row. To finance its operations, ESAD borrowed money from FIG and paid over $300,000.00 in interest for the use of the money. ESAD, however, was not paid any interest from the other related entities that owed ESAD large sums of money.
No documentation exists in the record before us to show whether payments were actually made to ESAD or whether the amounts allegedly charged were at a fair market value. ESAD and the non-ESAD defendants share common officers, directors, and employees, have substantial identity of ownership, operate out of the same physical office, and have provided services and funds to each other over the years as needed.
This lawsuit seeks to recover damages for various breaches of the sublease between ESAD, as sublessee, and the plaintiffs, as sublessor. No dispute exists that the plaintiffs have stated a cause of action against ESAD; however, ESAD is without the funds required to pay the damages if found at fault. Consequently, the plaintiffs also filed suit against the affiliated entities under the "single business enterprise" and "alter ego" theories of liability. The non-ESAD defendants filed a motion for summary judgment, which the trial court granted, finding that Louisiana law does not recognize the "single business enterprise" theory of liability in a contract case.[2] The trial court did not address the *738 "alter ego" theory of liability in its oral reasons for judgment. This appeal followed.
Essentially, the issue presented on appeal is a legal one: whether the "single business enterprise" theory applies in a contract case.[3] If this court finds that it does, then the case must remanded to the trial court for a determination of whether that theory applies to the facts of this case and whether a genuine issue of material fact exists to deny the motion for summary judgment. Questions of law are reviewed under the de novo standard. La. Mun. Ass'n v. State, 04-227 (La.1/19/05), 893 So.2d 809. Summary judgments are also reviewed under the de novo standard. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180. Therefore, we are required to determine whether the court below was legally correct. City of New Orleans v. Bd. of Comm'r of Orleans Levee Dist., 93-690 (La.7/5/94), 640 So.2d 237.
In Green v. Champion Insurance Co., 577 So.2d 249 (La.App. 1 Cir.1991), the First Circuit discussed and applied the "single business enterprise" theory to disregard the identities of a group of separate corporations. It listed 18 factors to be considered but cautioned that the list was illustrative and not intended as an exhaustive list of relevant factors; no one factor was dispositive of the issue. Id. at 257-58.
This circuit first adopted the Green factors, thereby applying the "single business enterprise" theory, in In re New Orleans Train Car Leakage Fire Litig., 96-1677, p. 3 (La.App. 4 Cir. 3/5/97), 690 So.2d 255, 257 and has continued to apply the theory in subsequent cases. The fact that this case arises out of a breach of contract does not preclude application of the theory. In Lee v. Clinical Research Center of Florida, 04-0428, p. 7 (La.App. 4 Cir. 11/17/04), 889 So.2d 317, 323, we stated:
This Court has also recognized the single business enterprise theory as a vehicle for holding a group of affiliated entities responsible for the obligations of one of the entities. In In re New Orleans Train Car Leakage Fire Litigation, 96-1677 (La.App. 4 Cir. 3/5/97), 690 So.2d 255, this Court stated that the legal fiction that a corporation is a distinct legal entity separate from the individuals who comprise it may be disregarded when a corporation is organized and controlled in such a way that it is merely an adjunct of another corporation. In such a case one corporation is considered to be the business conduit or alter ego of another. Courts can pierce the corporate veil of a corporation to impose liability on one corporation for the acts of another corporation. Id. at 257. In addition to piercing the corporate veil to disregard a corporate identity, courts have used the single business enterprise theory to extend liability beyond a separate entity. Id. This Court in In re New Orleans Train Car Leakage Fire Litigation adopted the list of factors used in the Green case for determining the existence of a single business enterprise. Id. See also Berg v. Zummo, XXXX-XXXX (La. 4 Cir. 7/02/03)[sic], 851 So.2d 1223, cert. denied, 2003-2209 (La.11/21/03), 860 So.2d 546.
No limitation on the use of the theory was recognized by the Lee court. *739 In fact, Lee involved the breach of an employment contract. While this court found no single business enterprise existed, that does not mean that the theory does not apply in a contract setting. Whether an affiliated group of entities constitutes a "single business enterprise" is a question of fact to be decided by the trial court. Id.; Grayson v. Ammon & Associates, Inc., 99-2597, pp. 21-22 (La.App. 1 Cir. 11/3/00), 778 So.2d 1, 15.
The appellees have argued that because corporate formalities were observed, the court cannot find that a single business enterprise exists in the instant case. First, that is a factual issue that has not been determined by the trial court, and, second, that is one of many factors for the lower court to consider when making its decision. We find that the trial court erred in granting the motion for summary judgment.[4]
Accordingly, we reverse and set aside the judgment and remand the matter for reconsideration of the motion for summary judgment in light of the views expressed in this opinion.
REVERSED AND REMANDED.
BELSOME, J. CONCURS IN THE RESULT.
NOTES
[1] That is, FIG owns all the stock of ESAD.
[2] The transcript containing the trial court's oral reasons for judgment states:

MR. SWANSON: Essentially the ruling is that you don't believe that ultimately the Supreme Court is going to find that in the contract context that there is a single business enterprise theory?
THE COURT: Correct.
[3] It is unnecessary for this court to determine if the trial court correctly found no genuine issue of material fact because no such finding was made.
[4] We pretermit discussion of the alter ego theory as it was not addressed by the trial court. We recognize the leading case on point is Riggins v. Dixie Shoring Co., Inc., 590 So.2d 1164 (La.1991).