692 So.2d 524 (1997)
William HAYWOOD, Plaintiff-Appellant,
v.
LOUISIANA SUGAR CANE PRODUCTS, et al., Defendant-Appellee.
No. 96-1151.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1997.
*525 Sera Hearn Russell, III, Joseph Frazer Gaar, Jr., Lafayette, for William Haywood.
James Bancroft Supple, Franklin, for Louisiana Sugar Cane Products, et al.
Musa Rahman, Baton Rouge, for Louisiana Worker's Compensation Corp.
Melvin Alan Eiden, Lafayette, for American Tank Company.
Minos H. Armentor, New Iberia, Richard Joseph Petre, Jr., Lafayette, Gina Marie Bradley Tuttle, Opelousas, Charles M. Gordon, Lafayette, for Louisiana Sugar Cane Cooperative, Inc.
Before DOUCET, C.J., and WOODARD and GREMILLION, JJ.
WOODARD, Judge.
Plaintiff initially filed suit against Louisiana Sugar Cane Products, Inc., seeking damages for injuries sustained while working on their property and subsequently filed a First Supplemental and Amended Petition, seeking to add as defendants five sugar mill co-operatives that were members of Louisiana Sugar Cane Products, Inc. The five sugar mills collectively filed a motion for summary judgment. The trial court granted summary judgment in their favor and dismissed them from the suit. Plaintiff appeals that judgment.

FACTS
The instant suit arises from an accident which occurred on July 30, 1994. At the time of the accident, the plaintiff, William Haywood, was employed by Stein Brothers Landscaping as a truck driver. On the day of the accident, he was delivering a shipment of molasses to Louisiana Sugar Cane Products, Inc. [hereinafter "LSCPI"] at its facility located in Port Barre, St. Landry Parish, Louisiana. LSCPI is an independent, non-profit corporation made up of five member co-operatives: Louisiana Sugar Cane Cooperative, Inc., St. Mary's Sugar Cooperative, Inc., Cajun Sugar Cooperative, Inc., Caldwell Sugars Co-Op, Inc., and St. James Sugar Cooperative, Inc. LSCPI had contracted with Stein Brothers Landscaping to provide trucks and drivers for the transportation of molasses from the members' facilities to LSCPI's storage tanks.
The plaintiff claimed that he was injured when he climbed on top of the molasses storage tank to monitor the off-loading of the molasses. He slipped and fell from the top of the tank. It is undisputed that the tanks in question are owned by LSCPI, and the site on which they are located was leased by LSCPI. The plaintiff is currently receiving worker's compensation and medical expense benefits through Stein Brothers Landscaping.
Plaintiff filed suit against LSCPI for damages relating to the accident. Subsequent to the initial suit, he discovered that LSCPI was organized exclusively to market the sale of the products of the five other sugar mill co-operatives. In a First Supplemental and Amended Petition for Damages, the plaintiff named, as additional defendants to the instant action, the five sugar mill co-operatives mentioned above.
The five sugar mills collectively sought summary judgment, claiming that there existed no genuine issues of material fact regarding their liability. After a hearing on the motions, the trial court granted summary judgment in their favor. Plaintiff appeals the trial court's ruling.

*526 ASSIGNMENTS OF ERROR
The plaintiff claims the following two assignments of error:
1) Judge McGee erred in granting a summary judgment to the five sugar mills, the St. Mary Sugar Co-op, Inc., et al, when there were material issues of fact in abundance to require a determination by a trier of fact of the merits of this case.
2) The District Court erred in failing to apply the single business enterprise theory to the sugar mills and its sales corporation, Louisiana Sugar Cane Products, Inc.

LAW

SUMMARY JUDGMENT
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Potter v. First Federal S & L, 615 So.2d 318 (La.1993). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).
Thus, when reviewing a trial court's judgment granting a motion for summary judgment, the first issue that must be addressed is whether there exists any genuine issue of material fact. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94); 639 So.2d 730, appeal after remand, 96-1837 (La.9/27/96); 680 So.2d 1163. The second issue the reviewing court must address is whether reasonable minds would conclude that, based on the facts presented, the mover is entitled to judgment. Id. In other words, summary judgment is appropriate when all relevant facts are brought before the court, the relevant facts are undisputed, and the sole issue remaining is the conclusion to be drawn from the relevant facts. Id.
Therefore, the party moving for summary judgment has the burden of proving two things: (1) that no genuine issue of material fact exists, and (2) that reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law. Penton v. Clarkson, 93-657 (La.App. 1 Cir. 3/11/94); 633 So.2d 918. If supporting documents presented by the mover fail to resolve all material factual issues, the motion for summary judgment must be denied. McCoy v. State Farm Mut. Auto. Ins. Co., 95-689 (La.App. 3 Cir. 11/2/95); 664 So.2d 572. If the mover's supporting documentation is sufficient to establish that no genuine issue of material fact exists, the burden of proving the existence of a genuine issue of material fact shifts to the non-moving party. Id. The criteria the non-moving party must meet to satisfy its burden of proof is stated in La.Code Civ.P. art. 967:
When a motion for summary judgment is made and supported ... an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
La.Code Civ.P. art. 966, effective May 1, 1996, governs this issue and states, in pertinent part:
A.(2) The summary judgment ... procedure is favored....
....
C. [A] motion which shows that there is no genuine issue as to a material fact and that the mover is entitled to judgment as a matter of law shall be granted against an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial.

(Emphasis added).
Prior to the 1996 amendment, any doubt regarding the existence of material facts was to be resolved against granting the summary judgment, even if grave doubts existed as to a party's ability to establish disputed facts at trial. Penton, 633 So.2d 918. The amendment does not change the law regarding burdens of proof, as the mover is still required *527 to prove the absence of a genuine issue and his entitlement to judgment. La. Code Civ.P. art. 966(C), (G); Short v. Giffin, 96-0361 (La.App. 4 Cir. 8/21/96), 682 So.2d 249; Walker v. Kroop, 96-0618 (La.App. 4 Cir. 7/24/96); 678 So.2d 580. However, it now appears, based on the new language of section (C), that in order to rebut a showing made by the mover of the non-existence of a genuine issue of material fact, the non-moving party will be held to a higher standard of proof, i.e. a non-moving party must sufficiently establish the existence of proof of an essential element of his claim on which he is to bear the burden of proving at trial. La. Code Civ.P. art. 966(C).
It is well understood that summary judgment is a procedural rule. See Penalber v. Blount, 550 So.2d 577 (La.1989). Therefore, the amended Article 966 should be applied retroactively to pending motions and cases on appeal, and particularly to the case sub judice. Short, 682 So.2d 249.

ASSIGNMENTS OF ERROR
In his two assignments of error, the plaintiff argues that the trial court erred in granting summary judgment in favor of the five sugar mills because they, together with LSCPI, constituted a single business enterprise, and, as such, are jointly and severally liable shareholders for the plaintiff's damages. In support of this assertion, Haywood argues that because the five member co-operatives act through LSCPI for the advancement of their own best interests and common business purposes, LSCPI is not distinguishable from the five member co-operatives. That is, that LSCPI and the co-operatives are a "single business enterprise." Notwithstanding, in his brief, he fails to specify any remaining material issues of fact which would defeat a Motion for Summary Judgment. In fact, he states in his brief that "the facts are not really in dispute here." Rather, he alleges that the inferences which a jury could draw from these underlying facts, namely that LSCPI is a sub-unit of a single business enterprise, precludes the granting of a summary judgment. Thus, in determining whether summary judgment is appropriate, this court must now address whether reasonable minds would conclude that, based on the facts presented, the mover is entitled to judgment. Id. In other words, we must determine whether the trial court's finding that the five co-operatives and LSCPI did not compose a single business entity was error as a matter of law, and if so, whether "piercing the corporate veil" is appropriate.
Because LSCPI is a corporation owned by, and operating for the benefit of, the five member co-operatives, to answer these questions we must determine: (1) whether the actions of the five member co-operatives in establishing LSCPI are authorized by the substantive law governing co-operative marketing associations and, (2) whether LSCPI itself violated the substantive law governing corporate activities.

CO-OPERATIVE MARKETING LAW
The plaintiff relies on two cases, Brown v. Automotive Casualty Insurance Company, 93-2169 (La.App. 1 Cir. 10/7/94); 644 So.2d 723, writ denied, 94-2748 (La.1/6/95); 648 So.2d 932, and Green v. Champion Insurance Company, 577 So.2d 249 (La.App. 1 Cir.), writ denied, 580 So.2d 668 (La.1991), in support of his argument that the co-operatives in the case sub judice constitute a single business entity and that, therefore, LSCPI's corporate veil should be pierced, allowing the defendant to proceed against the individual member co-operatives.
In Green, 577 So.2d at 257, the court stated:
Whether an affiliated group of entities constitutes a "single business enterprise" is a question of fact to be decided by the trial court. Talen's Landing, Inc. v. M/V Venture, II, 656 F.2d 1157, 1160 (5th Cir.1981). The appellants correctly point out that the standard of review as to this issue is manifest error or clearly wrong....
....
When corporations represent precisely the same single interest, the court is free to disregard their separate corporate identity.
However, both of the cases cited by the plaintiff are clearly distinguishable from the case at bar. First, both Brown and Green involved entities existing under a different *528 relationship than the co-operatives herein, namely parent companies which had fragmented into several subsidiary corporations which did not function as separate entities. Second, and more importantly, both Brown and Green involved insurance companies operating under the Louisiana Code of Insurance, not cooperatives formed pursuant to the Louisiana Cooperative Associations Law, which applies to the case sub judice. Therefore, plaintiff's reliance on Brown and Green is misplaced.
Because the plaintiff has not alleged shareholder fraud, he bears a heavy burden of proving that the shareholders disregarded the corporate entity and that LSCPI was not distinguishable from the five member co-operatives. Riggins v. Dixie Shoring Co., Inc., 590 So.2d 1164 (La.1991). The plaintiff attempts to meet this burden by pointing out that LSCPI was "organized solely for the purpose of marketing and selling the product of another group of corporations," namely, the five member cooperative sugar mills. In his First Supplemental and Amended Petition for Damages, the plaintiff also alleges that the five member co-operatives "were acting together in the best interest of all parties" and "integrated their resources for purposes of achieving a common business purpose, namely the production, manufacture and sale of raw sugar, molasses and/or sugar cane products." In other words, the plaintiff contends that the corporate veil of LSCPI should be pierced due to the fact that the five sugar mill member co-operatives were acting, through LSCPI, for the advancement of their own best interests and common business purposes as a single business entity. In support of his argument that the co-operatives form a single business entity, the plaintiff, in his brief, states:
[W]hile all the co-ops produce an incredible amount of sugar products, they do not sell it. One would think that a co-op would want to sell its product and make money. Why go to the trouble of producing it and then further go to all of the trouble of refining it, storing it, decontaminating it, and then not sell the sugar and sugar by-products. The reason is that the sugar mills have created this supposedly separate "entity" called LSCPI ... to market and sell it for them. The marketing and selling activity is not done out of the kindness of LSCPI's heart. LSCPI was created by the co-ops for the sole purpose of marketing their product. It doesn't market and sell anyone else's product.
The very activities complained of, namely LSCPI's marketing and selling of the products produced or delivered to it by its members, are not only specifically authorized by the agriculture cooperative statutes but constitute the very purpose for which this statute was created. La.R.S. 3:121 states that:
The purpose of this Part [governing co-operative marketing associations] is to promote, foster, and encourage the intelligent and orderly marketing of agricultural products through co-operation; to eliminate speculation, unnecessary middlemen, and waste; to make the distribution of agricultural products as direct as can be efficiently done between producer and consumer; and to stabilize the marketing of agricultural products.
La.R.S. 3:125 states, in pertinent part:
Each association incorporated under this Part shall have the following powers:
(1) To engage in any activity in connection with the marketing, selling, ... storing, handling, or utilization of any agricultural product produced or delivered to it by its members; or the manufacturing or marketing of the by-products thereof; or in connection with the purchase, hiring, or use by its members of supplies, machinery, or equipment, or in the financing of any such activities; or in any one or more of the activities specified in this Section. No association shall handle the agricultural products of any non-member, except as necessary and incidental to the handling of the products of the members; and in any case, the value of the products of nonmembers handled, shall not exceed the value of the products handled by the association for its members.
(Emphasis added). See also La.R.S. 3:86; La.R.S. 3:146 (exempting co-operatives from corporate anti-trust legislation); La.R.S. 3:122 (providing that co-operatives are to be *529 non-profit, inasmuch as they cannot profit for themselves).
The record reflects that LSCPI's Articles of Incorporation mirror the language of the statute. In addition, Section 3:139 of the Co-operative Marketing Law specifically states, in pertinent part, that: "Any provisions of law which are in conflict with this Part, shall be construed as not applying to the association herein provided for...." La. R.S. 3:149 states:
The provisions of the general corporation laws of this State and all powers and rights thereunder shall apply to the association organized hereunder, except where such provisions are in conflict with, or inconsistent with, the express provisions of this Part.
Thus, the law governing the actions of co-operatives is different from general corporate law and, in fact, pre-empts corporate law when co-operative marketing associations are involved. We, therefore, find that LSCPI is incorporated as a Cooperative Marketing Association and that its actions, as such, are specifically authorized by statute. One of the main purposes of a corporation is to limit the personal liability of its shareholders, in this case, the five member co-operatives. Riggins, 590 So.2d 1164. Because the legislature has authorized the incorporation of associations such as LSCPI for the purposes of marketing the products of its member co-operatives, it would be inconsistent for this court to now hold that the same actions authorized by the Co-operative Marketing Law justify piercing the corporate veil in order to hold the member co-operatives individually liable. As such, we find Haywood's argument, that the relationship between LSCPI and the five member co-operatives justifies piercing the corporate veil, to be without merit.

LOUISIANA CORPORATIONS LAW AND PIERCING THE CORPORATE VEIL
As shown above, in favor of the strong public policy in support of promoting the marketing of agricultural products in this state, the legislature did not intend for co-operatives, such as the one at issue here, to be subject to all aspects of traditional corporations law. La.R.S. 3:121. Thus, while we find that the actions of LSCPI in marketing and selling the products produced or delivered to it by its members are specifically authorized by the agriculture cooperative statutes, we must still determine whether, under general corporate law, LSCPI has engaged in any activities which would justify piercing the corporate veil.
In Smetherman v. Wilson, 626 So.2d 71 (La.App. 3 Cir.1993), this court noted that there are two exceptions to the rule of non-liability of shareholders for the debts of the corporation. One exception is based on fraud; that is, material misrepresentations made by one party designed to deceive another to obtain some unjust advantage or to cause loss or inconvenience to the other. La.Civ.Code art.1953. This exception is inapplicable in the case sub judice because Haywood has made no allegations, and there is no evidence to show, that LSCPI has made any material misrepresentations or acted fraudulently.
The second exception, however, often referred to as the "alter ego" doctrine, is applicable. The alter ego doctrine "involves the corporation's failure to conduct its business on a corporate footing, thereby disregarding the corporate entity to such an extent that the corporation ceases to be distinguishable from its shareholders." Id. at 73. In Riggins, 590 So.2d at 1168, the supreme court stated that "if the plaintiffs do not allege shareholder fraud, they bear a heavy burden of proving that the shareholders disregarded the corporate entity to such an extent that it ceased to become distinguishable from themselves."
The Louisiana Supreme Court, in Glazer v. Commission on Ethics for Public Employees, 431 So.2d 752, 757-8 (La.1983), stated that:
The policies behind recognition of a separate corporate existence must be balanced against the policies justifying piercing. For example, if the corporation's separate identity is to be disregarded for the purpose of imposing individual liability upon its shareholders, the strong social interest in encouraging capital investment would require that the separate identity be respected *530 absent conduct on the part of the shareholders constituting waiver of the privilege of insulation, such as their own disregard for the corporate form, or their use of the corporate form to perpetrate fraud. On the other hand, if the separate corporate capacity is asserted to evade a statutory restriction or regulation, abridgement, rather than abrogation, of the corporate entity privilege may be called for to prevent frustration of an important public regulatory policy without thwarting the basic goals of separate corporate capacity. Depending upon the various competing policies and interests involved, the same factual scenario may result in recognition of a separate corporate identity for some purposes, i.e. insulation of shareholders from liability, and a disallowance of the separate corporate entity privilege for others. Each situation must be considered by the court on its merits. The facts presented must demonstrate some misuse of the corporate privilege in that situation or the need of limiting it in order to do justice.
As Sanborn, J., said in a much quoted federal case,
If any general rule can be laid down in the present state of authority, it is that a corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears; but, when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons.
(Citations omitted).
Generally, grounds for piercing the corporate veil under the "alter ego" doctrine include, but are not limited to:
(1) The corporation's failure to follow statutory corporate formalities, including conducting regular shareholder and directors meeting;
(2) the commingling of the shareholders' assets with those of the corporation;
(3) failure to maintain separate bank accounts and records; and
(4) the undercapitalization of the corporation such that it would not have sufficient funds necessary to do business or meet reasonably expected risks.
Riggins, 590 So.2d 1164.
In the present case, the following facts are undisputed. LSCPI is a non-profit corporation which markets the products of its member co-operatives for sale. Pursuant to La.R.S. 12:201 et. seq., which governs non-profit corporations, LSCPI has observed corporate formalities inasmuch as they have: Reserved a corporate name; filed Articles of Incorporation with the Secretary of State; enacted by-laws; established a Board of Directors; elected officers; held board meeting every two months since their incorporation; and recorded their board meetings. LSCPI's Board of Directors is comprised of the following individuals: F.A. Graugnard, Branan B. Beyt, Jr., A.J. LeBourgeois, Jackie Theriot, Felix Blanchard and Kenneth Peltier. Messrs. Graugnard, Beyt and LeBourgeois are also the officers of LSCPI. Other than Mr. LeBourgeois, whose only office is the one he currently holds at LSCPI, each of the remaining board members maintains a seat on the board of one the five respective member co-operatives. Therefore, while LSCPI's Officers and Board of Directors are made up of directors of its member co-operatives, or shareholders, no one cooperative/shareholder controls LSCPI's board. Additionally, LSCPI receives funds from bank loans in order to pay for expenses incurred throughout the year, such as the lease of the land on which its operation is located. Each member cooperative is assessed a share of the expenses and asked to reimburse LSCPI, according to the amount of service provided to the cooperative. More importantly, LSCPI has consistently kept separate bank accounts from its member co-operatives. Further, LSCPI had $30,600 in total capital at the time of the filing of the suit and carries worker's compensation insurance in its own name through Sugar Cane Safety Group, although it does not carry separate liability insurance.
When these facts are viewed in the context of the grounds for piercing the corporate veil enumerated above, it is clear that LSCPI *531 was not the alter ego of the five member co-operatives. On the contrary, the evidence shows that LSCPI has followed the corporate formalities required by La.R.S. 12:201 et. seq; conducted regular board meetings, managed its funds in separate and distinguishable accounts, and maintained sufficient funds necessary to do business or meet reasonably expected risks, including a capital account of $30,600 in addition to maintaining assets valued at $182,440. As such, we cannot say that the trial court erred in granting the defendants' motion for summary judgment. This assignment is without merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to the plaintiff.
AFFIRMED.