780 So.2d 1284 (2001)
MURPHY'S LEASE & WELDING SERVICE, INC.
v.
BAYOU CONCESSIONS SALVAGE, INC.
Murphy's Lease & Welding Service, Inc.
v.
Scottsdale Insurance Company.
Nos. 00-978, 00-979.
Court of Appeal of Louisiana, Third Circuit.
March 8, 2001.
*1285 John Fayne Wilkes III, Borne, Wilkes, etc., Lafayette, LA, Counsel for Defendant/Appellee Bayou Concessions Salvage, Inc., Kenneth Stewart.
Patrick J. Briney, Briney & Foret, Lafayette, LA, Counsel for Defendant/Appellee Industrial Pipe.
Roger Chadwick Edwards, Jr., Edwards & Edwards, Abbeville, LA, Counsel for Plaintiff/Appellant Murphy's Lease & Welding Serv., Inc., Gerald D. Libersat, May G. Libersat, Judy G. Libersat.
W. Eric Lundin III, Attorney at Law, Belle Chasse, LA, Counsel for Defendant/Appellee Bayou Concessions Salvage, Inc., Industrial Pipe.
James L. Pate, Laborde & Neuner, Lafayette, LA, Counsel for Defendant/Appellee Insurance Underwriters.
Karen Julian King, Borne, Wilkes & Brady, Lafayette, LA, Counsel for Defendant/Appellee Kenneth Stewart, Bayou Concessions Salvage, Inc.
*1286 Court composed of YELVERTON, WOODARD, and PICKETT, JJ.
WOODARD, Judge.
The only issue we must resolve on appeal is whether the trial court erred when it granted Mr. Kennett Stewart's and Bayou Concessions Salvage Inc.'s, (Bayou) motion for summary judgment, dismissing Mr. Stewart from this litigation. Specifically, the issue is whether the record on appeal presents a genuine issue of material fact. Finding that it does, we reverse.

* * * * *
On March 26, 1997, Murphy's Lease and Welding Service, Inc., (Murphy's) through its secretary, Mr. Gerald D. Libersat, agreed to sell salvage rights for two sunken barges to Bayou through its director, Mr. Stewart, for $6,500.00. The contract specified that the sale was to operate on an "as is where is" basis, with March 31, 1997 as the effective date, and gave Bayou 90 days from March 31, 1997, to recover the barges. The contract also contained extensive indemnity clauses, generally exonerating Murphy's from all risks, arising out of the salvage operations. Finally, it obligated Bayou to incur insurance coverage for the following risks and in the following general terms:
Buyer agrees that at its own costs and expense, it will procure and maintain during the primary term and any extension thereof, insurance for events occurring in, upon or about the premises for the benefit of the Seller and the Buyer as their respective interest shall appear, the following insurance coverage with solvent insurance companies acceptable to Seller and doing business in the State of Louisiana.
. . . .
Seller shall be entitled to receive, and shall receive, any notices which are necessary to insure compliance with this agreement, including but not limited to all premium renewal notices or other written communications necessary to protect Seller's interest. Each such policy shall specifically provide that it shall be non-cancelable with respect to Seller without thirty (30) days prior to written notice to Seller, Certified Mail, Return Receipt Requested, at Seller's designated address.
(Emphasis added.)
Mr. Stewart provided Murphy's with a certificate of liability insurance issued by Scottsdale Insurance Company (Scottsdale) through Insurance Underwriter Ltd. (IUL). The certificate provided that coverage became effective on January 12, 1997, through January 12, 1998. Nevertheless, on March 24, 1997, or two days before the parties signed the contract and Bayou presented proof of insurance, IUL sent Bayou a notice of cancellation providing, in relevant part, the following:
The premium finance is in default and said default has not been cured.... The above insured and submitting producer have previously been given the required statutory written notice of our intent to cancel which has expired. Any payment received after the mailing or delivery of notice of cancellation to the insurer will not reinstate the policy.
(Emphasis added.) The notice specified April 7, 1997 as the effective cancellation date.
Thereafter, Mr. Stewart retained Mr. Danny Chapman to assist in the salvage operation. Mr. Chapman warned Mr. Stewart that the material he planned to use to proceed in the salvage operation was insufficient. However, Mr. Chapman claimed that Mr. Stewart told him to "go for it" anyway. The salvage operation ended in a fiasco, damaging some of Murphy's property and blocking access or exit to some of its docks. A dispute arose between the parties because of the failed salvage operation, but they reached a compromise agreement on May 30, 1997.
The agreement reiterated the March 31, 1997 contract's validity and specified that Bayou shall undertake salvage operations continuously from May 31, 1997, that it could utilize portions of Murphy's land adjacent *1287 to a dock, that it shall repair the property damage, which the initial failed salvage attempt caused, and that it pay Murphy's $500.00. In addition, the agreement specified the following:
BAYOU shall continue to indemnify MURPHY'S in accordance with the terms and conditions of the Cash Deed, and confirms that the insurance policy issued by Scottsdale Insurance Company and LWCC, through Insurance Underwriters, Ltd., remains in effect under the same terms and conditions as were required by the cash deed.
(Emphasis added.) Both Mr. Libersat and Mr. Stewart signed the agreement for their respective companies.
Bayou apparently did not resume its salvage operations on the compromise agreement's specified date but made some arrangements with A & A Oilfields Contractors, Inc. of Lafitte, Louisiana, to be on target for June 25, 1997 for a new salvage attempt. Nevertheless, through Mr. Stewart, Murphy's counsel sent Bayou a letter specifying that:
[Bayou has] failed to abide by the terms of the agreement entered into between [Bayou] and Murphy's Lease & Welding Service, Inc. dated March 26 and 31, 1997, and the Compromise Agreement of May 30, 1997, by failing to pay the $500.00.
Then, in a letter dated June 23, 1997:
Please be advised that there will be no extension of your lease. You have until the 24th of June 1997 to remove your property and vacate the premises.
Your presence on the property is subject to the presence of the required insurance coverage. By means of this letter, I am notifying your insurer that it is our understanding that this coverage remains in place and their failure to notify us otherwise shall constitute confirmation of this fact.
Murphy's filed a Lessor's Privilege on the barges on June 25, 1997 and filed suit on July 2, 1997, naming Bayou as a Defendant On July 9, 1997, it amended its petition to add Mr. Stewart as a Defendant. Bayou and Mr. Stewart filed a motion for summary judgment on December 17, 1999, requesting Mr. Stewart's dismissal from the litigation on the basis that no genuine issue of material fact existed to show his personal liability to Murphy's. The trial court granted Bayou's and Mr. Stewart's motion in a judgment entered on January 27, 2000. Murphy's appeals.

* * * * *

MR. STEWART'S PERSONAL LIABILITY
The only issue necessary to address in this appeal is whether the trial court erred when it granted Bayou's and Mr. Stewart's motion for summary judgment on the basis that no genuine issue of material fact existed to find Mr. Stewart solidarily liable for all damages that Bayou may eventually owe to Murphy's.
Appellate courts review summary judgments de novo under the same criteria that governed the trial court's consideration of whether or not summary judgment was appropriate.[1] Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.[2]
La.Code Civ.P. art. 966, charges the moving party with the burden of proving that summary judgment is appropriate. In doing so, the moving party's supporting documentation must be sufficient to establish that no genuine issue of material fact remains at stake.[3] Once the mover makes a prima facie, showing that there is no genuine issue as to a material fact and that *1288 summary judgment should be granted, the burden shifts to the nonmover.[4] Furthermore, La.Code Civ.P. art. 967 provides, in pertinent part:
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleadings, but his responses by affidavits or otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
The threshold question in reviewing a trial court's grant of summary judgment is whether a genuine issue of material fact remains.[5] After which, we must determine whether reasonable minds could conclude, based on the facts presented, that the mover is entitled to judgment.[6] Thus, summary judgment is apropos when all relevant facts are brought before the court, the relevant facts are undisputed, and the sole remaining issue relates to the legal conclusion to be drawn from the facts.[7]
Facts are material if they determine the outcome of the legal dispute.[8] The determination of the materiality of a particular fact must be made in light of the relevant substantive law.[9]
It is well settled that a corporation is a distinct legal entity, separate from its individual components.[10] Because the corporate concept serves a beneficial role, the attached limited liability principle may only be disregarded in exceptional circumstances;[11] namely, if a claim alleges the existence of a fraud or if it is based upon the alter ego theory.[12]
Regarding the fraud exception, it consists in material misrepresentations committed by one party with the design to deceive another to obtain an unjust advantage or to cause loss or inconvenience to the other.[13] Fraud, as applied to contracts, may also result from silence or inaction calculated to produce a misleading effect.[14] There are two prerequisites to establishing legal fraud: (1) intent to defraud or gain an unfair advantage; and (2) resulting loss or damage.[15]
In the instant case, the fact that Murphy's suffered damages is undisputed. However, Bayou contends that Murphy's failed to adduce any evidence regarding Mr. Stewart's alleged fraudulent intent. The trial court granted Bayou's and Mr. Stewart's motion for summary judgment, stating that "the evidence is not sufficient to establish a genuine issue of material fact concerning Mr. Stewart's personal liability. In fact, the Court determined that Mr. Stewart was acting in his capacity as a corporate officer, during his dealings with plaintiff, and not in his individual capacity." We disagree.
It is clear from the undisputed facts that Mr. Stewart, on several instances, represented to Murphy's that Bayou possessed the requisite insurance coverage in satisfaction of their contractual obligations, *1289 when such insurance coverage had, in fact, been canceled, apparently for non-payment. Mr. Libersat also asserted in an affidavit that he would not have contracted with Bayou and Mr. Stewart had he known that Bayou did not have the contractually required insurance coverage. Finally, both the March 26, 1997 contract or its May 30, 1997 amendment clearly placed upon Bayou the burden of incurring the contractually required insurance coverage.
In Belgard v. American Freightways, Inc.,[16] we recently reiterated the long-standing jurisprudence which sets forth that issues pertaining to subjective facts such as intent, knowledge, motive, malice, or good faith are usually not appropriate to a summary judgment determination. In the instant case, we find the unrebutted facts to be strongly suggestive of the possibility of fraud by Mr. Stewart. In the very least, the record reflects the existence of a genuine issue of material fact regarding Mr. Stewart's alleged fraud which should be the subject of a determination on the merits.
Accordingly, we reverse the trial court's summary judgment and remand the case for further proceedings. The resolution of this assignment of error pretermits discussion of other issues raised in this appeal.

CONCLUSION
After reviewing the record de novo, we find that it reflects the existence of genuine issues of material fact regarding Mr. Stewart's alleged fraud. Accordingly, we reverse the trial court's summary judgment and remand the case for further determination on the merits. We cast Bayou and Mr. Stewart with costs.
REVERSED AND REMANDED.
NOTES
[1] Schroeder v. Board of Sup'rs of La. State Univ., 591 So.2d 342 (La.1991); Soileau v. D & J Tire, Inc., 97-318 (La.App. 3 Cir. 10/8/97); 702 So.2d 818, writ denied, 97-2737 (La. 1/16/98); 706 So.2d 979.
[2] La.Code Civ.P. art. 966(B).
[3] Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97); 702 So.2d 323.
[4] Id.
[5] Kumpe v. State, 97-386 (La.App. 3 Cir. 10/8/97); 701 So.2d 498, writ denied, 98-50 (La.3/13/98); 712 So.2d 882.
[6] Id.
[7] Id.
[8] Soileau, 702 So.2d 818.
[9] Id.
[10] Riggins v. Dixie Shoring Co., 590 So.2d 1164 (La.1991).
[11] Id.
[12] Haywood v. Louisiana Sugar Cane Prods., 96-1151 (La.App. 3 Cir. 3/5/97); 692 So.2d 524.
[13] La.Civ.Code art. 1953; Haywood, 692 So.2d 524.
[14] First Downtown Dev. v. Cimochowski, 613 So.2d 671 (La.App. 2 Cir.), writ denied, 615 So.2d 340 (La.1993).
[15] Id.
[16] 99-1067 (La.App. 3 Cir. 12/29/99); 755 So.2d 982, writ denied, 00-293 (La.3/31/00); 756 So.2d 1147.