STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-1026

LOUISIANA PIGMENT COMPANY, L.P.

VERSUS

SCOTT CONSTRUCTION COMPANY, INC., ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 04-5205, Div. F
HONORABLE WILFORD D. CARTER, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and James T. Genovese, Judges.

AFFIRMED.

GENOVESE, J., dissents and assigns written reasons.

Clayton A. L. Davis
Samuel B. Gabb
Thomas P. LeBlanc
Lundy & Davis, L.L.P.
Post Office Box 3010
Lake Charles, LA   70602-3010
(337) 439-0707
COUNSEL FOR PLAINTIFF/APPELLANT:
     Louisiana Pigment Company, L.P.

Ward Lafleur
Katherine A. Theunissen
Mahtook & Lafleur
Post Office Box 3089
Lafayette, LA   70502-3089
(337) 266-2189
COUNSEL FOR DEFENDANTS/APPELLEES:
     Scott Construction Company, Inc.
     Virgil Cobb

AMY, Judge.

The plaintiff, Louisiana Pigment Company, L.P. (LPC), entered into a lease agreement with defendant, Scott Construction Company, Inc. (Scott), for ten forklifts. Scott assigned the lease to Toyota Motor Credit Corporation (Toyota). After the forklifts were delivered, LPC complained that they did not have the "deluxe" or suspension seats that it requested. Scott attempted to remedy the situation but was unsuccessful. LPC subsequently terminated the lease agreement and returned the forklifts to Scott. Thereafter, Toyota sued LPC for breach of contract in federal court. LPC filed a motion for summary judgment in the federal court proceedings which, after a hearing, was granted. LPC thereafter instituted this suit against Scott and its employee, Virgil Cobb (Cobb), seeking to recover attorney fees that it incurred in defending the breach of contract suit in federal court. LPC also alleged that its damages were caused by Scott's fraud. Scott and Cobb filed motions for summary judgment, which the trial court granted. LPC now appeals. For the following reasons, we affirm.

## Factual and Procedural Background

The record indicates that in August 2001, LPC wanted to lease ten forklifts to use at its facility in Westlake, Louisiana. According to Cobb[1], branch manager at Scott, LPC sent a quote package, which contained a description of the equipment it needed, to various vendors. Cobb testified that he submitted a bid, which was to LPC's liking. Thereafter on August 31, 2001, Cobb brought a forklift to LPC's facility for a demonstration. According to Cobb, LPC was interested in leasing this

---

[1] We note that excerpts from Cobb's deposition were submitted in opposition to the defendants' motions for summary judgment. Only those documents contained in the summary judgment submission have been considered in review of the summary judgment. However, for ease of discussion, information from elsewhere in the record is referred to in the initial paragraphs of the "Factual and Procedural Background."

particular forklift; however, there were some concerns about the height of the demonstrated forklift as it was higher than the forklifts that LPC was currently operating. When LPC asked Cobb, if there was a forklift with a lower headrack, he answered affirmatively. LPC and Scott entered into a lease agreement for the forklifts with the lower headrack. This lease agreement was assigned to Toyota.

According to LPC, it informed Scott, through its salesman, David Coontz (Coontz), that it wanted "suspension" or "deluxe" seats. However, Cobb testified that he did not know what LPC was seeking in terms of seats. He further testified that on the day of the demonstration, there was no discussion about the forklift seats. Cobb stated that the forklift that was demonstrated had the same type of seat that was on the forklifts LPC was using at that time. He referred to this type of seat as a "semi-suspension" or a "full suspension" seat.

Cobb testified that the leased forklifts had a different seat than the one demonstrated because of the lower overhead guard option. He explained that the leased forklifts had "the standard seat that Toyota installs on that machine with the lower guard." Upon further questioning, he stated that if the forklifts did not have the requested lower headrack, a "full suspension" seat would have been available.

Cobb testified that he first became aware of a problem with the seats on the leased forklifts when "[w]e were probably 90 to 120 days into the program when Mr. Koonce [sic] c[a]me into the office one day and said that the customer was not comfortable in the seat, wanted to know if there was anything else available." According to Cobb, several attempts were made to fix the problem. He stated that Scott tried to readjust the seats and change the angle. "Additionally, [w]e have had [a] product support representative from Toyota come in and try to do a retrofit, try to

2

get a different seat and put on there." Cobb explained that within thirty days of LPC's complaint, Toyota put a different seat on one of the forklifts. He described this seat as a deluxe seat or a "very expensive suspension seat[.]"

Although this seat met LPC's needs, according to Cobb, it violated ANSI and OSHA standards in that a certain amount of distance is required between the top of the seat and the bottom of the headrack. Cobb testified that because of this, "[w]e made a last ditch effort, if you will, to get a waiver for the ANSI standard. . . . We presented the waiver to [LPC] for these guys to sign off on and release Toyota of any indemnification, I assume, by going with the deluxe seat and these machines. [LPC] refused." Cobb further testified that it was verbally conveyed to LPC that if it signed the waiver, the deluxe seats would be placed on the forklifts at no cost to LPC.

After fifteen months of using the leased forklifts, LPC sought replacement forklifts from another vendor. The record indicates that on May 2, 2003, LPC sent a letter to Scott informing Scott that it was terminating the lease agreement effective June 2, 2003. On June 20, 2003, LPC sent Scott a letter confirming the termination of the lease agreement. LPC also informed Scott that it had until June 30, 2003 to remove the forklifts from its facility. A carbon copy of this letter was sent to Toyota. Consequently, on August 18, 2003, Toyota filed suit in federal court against LPC for breach of contract.[2] The federal court granted LPC's motion for summary judgment, finding that the lease contracts were void *ab initio* due to error of cause in that the leased forklifts were not what LPC ordered.

On September 10, 2004, LPC filed a petition against Scott and Cobb, individually, alleging that:

---

[2] Scott was not a party to this litigation.

3

Scott and Virgil Cobb's actions were fraudulent in that they failed to comply with agreements between Scott and LPC despite admitting that the agreed upon seats had not been delivered and despite continued representations to LPC that the seats would be replaced with compliant seats. Instead, the defendants have allowed Toyota Motor Credit Corporation, Scott's assignee, to sue LPC for accelerated rental payments, costs, interest, attorney fees and other expenses when LPC was forced to seek replacement forklifts because its continued use of the defective seats was causing a safety hazard to its forklift operators.

It also claimed that the "Defendants are liable to LPC for all attorney fees, interest, costs and other expenses incurred by LPC in defending the suit by Toyota Motor Credit Corporation."

Although the defendants filed separate motions for summary judgment, their arguments are basically the same. They alleged that the fraud claim had prescribed and that they did not make any material misrepresentations or omissions. After a hearing, the trial court granted the defendants' motions for summary judgment and dismissed LPC's claims. LPC appeals and asserts the following assignments of error:

1.) The trial court erred in granting defendants' motions for summary judgment on plaintiff's fraud claim by concluding plaintiff could not prove fraud, as it is inappropriate on summary judgment for the trial court to weigh the evidence and resolve issues of fact.

2.) The trial court erred in granting defendants' motions for summary judgment on plaintiff's fraud claim by concluding no genuine issues of material fact existed with regard to defendants' intent to defraud plaintiff, as subjective facts such as intent are typically inappropriate for resolution on summary judgment and the undisputed facts in this case clearly give rise to an inference of fraudulent intent on the part of defendants sufficient to at least create a genuine issue of material fact.

3.) The trial court erred in granting defendants' motions for summary judgment on plaintiff's fraud claim and innominate tort cause of action for fraudulently inducing meritless litigation against plaintiff, inasmuch as the trial court simply failed to even address these claims.

4

**Discussion**

*Standard of Review & Summary Judgment*

Appellate courts review summary judgments *de novo* and use the same criteria as the trial court in determining whether summary judgment is appropriate. *Nguyen v. Underwriters at Lloyd's*, 05-1407 (La.App. 3 Cir. 5/3/06), 929 So.2d 821, *writ denied*, 06-1332 (La. 9/22/06), 937 So.2d 387. Pursuant to La.Code Civ.P. art. 966(B), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law."

> Louisiana Code of Civil Procedure Article 966 charges the moving party with the burden of proving that summary judgment is appropriate. However, when the movant will not bear the burden of proof at trial on the matter that is before the court, the movant's burden on the motion does not require him to negate all of the essential elements of the adverse party's claim, but rather to point out to the court that there is an absence of factual support for one or more of the elements essential to the adverse party's claim. *See* La.Code Civ.P. art. 966(C)(2). If the adverse party fails to produce factual support to convince the court that he can carry his burden of proof at trial, there is no genuine issue of material fact and granting of the motion is mandated. *Hardy v. Bowie*, 98-2821 (La. 9/8/99), 744 So.2d 606; *Hayes v. Autin*, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, *writ denied*, 97-281 (La. 3/14/97), 690 So.2d 41.

*Nguyen* at 823.

*Fraud*

LPC's fraud claim has two components. First, LPC contends that "Scott and Virgil Cobb repeatedly assured LPC the seat issue would be remedied even though Scott and Virgil Cobb had no intention of remedying the problem, thereby causing LPC to remain in the lease relationship with TMCC for almost 15 months[.]" Second, LPC alleges that "Scott and Virgil Cobb's intentional actions in knowingly adopting

5

a false position contrary to the previous fifteen months of promises and assurances given LPC constitutes legal fault that was the cause of damages to LPC."

With regard to the trial court's actions, LPC argues that it was inappropriate on a summary judgment motion for the trial court to weigh the evidence and resolve issues of fact. Additionally, LPC contends that "subjective facts such as intent are typically inappropriate for resolution on summary judgment[.]" According to LPC, "the undisputed facts in this case clearly give rise to an inference of fraudulent intent on the part of the defendants sufficient to at least create a genuine issue of material fact."

Louisiana Civil Code Article 1953 states that: "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." Therefore, "[t]he two elements essential to establishing legal fraud are an intent to defraud or gain an unfair advantage and a resulting loss or damage." *Mack v. Evans*, 35,364, p. 3 (La.App. 3 Cir. 12/5/01), 804 So.2d 730, 733, *writ denied*, 02-0422 (La. 4/19/02), 813 So.2d 1088.

At the summary judgment hearing, defense counsel agreed with the trial court's statement that certain factual findings must exist to prove fraud. Nevertheless, defense counsel argued that the trial court need not address those findings as LPC's fraud claim had prescribed. When defense counsel began reciting the case's factual background, the trial court posed the question: "How did Scott Construction commit fraud?" Defense counsel responded:

> They say that there were misrepresentations and I don't think they can point to any misrepresentations about these seats and what was being done to resolve it. But I'll tell what their argument is in brief and why, number one it's prescribed and number two, it's not fraud. They

6

say, you know, we're lulled into this false sense of security during the lease and low and behold once the lease is cancelled, there is a letter, and this is the key to their argument. There is a letter dated August 4, 2003, from Virgil Cobb, the sales manager with Scott Construction to Louisiana Pigment, and it basically says, look we tried to resolve this situation, but we think the lease is valid and we think that you owe Toyota Motor Credit Company. And their argument is that somehow Toyota Motor Credit Company relied on this letter that wasn't sent to Toyota Motor Credit Company and that this letter was somehow a revelation to them, that all along Scott Construction had been lying to them about what they were doing to try to resolve the lease.

LPC explained the basis for its fraud claim:

[O]ne of our arguments is that the Toyota Motor case was based upon the knowingly false position assumed by Scott Construction. That is, they had for fifteen months told us we messed up, it's our mistake, we'll fix it. As soon as Toyota Motor apparently starts putting some pressure on them about collecting on these leases[,] Virgil Cobb flip flops, writes a letter that says, hey we complied [one] hundred percent with our agreements, you guys owe the leases[. O]n that representation, Toyota Motor credit files a suit to enforce those lease agreements.

. . . .

But here is the argument. Toyota Motor Credit had they been given the truth about the situation, would not have filed this lawsuit.

In its oral ruling, the trial court explained:

I don't think that you could prove fraud in this case. I don't think by the fact that they told you, the people that you dealt with to get the forklift, hey we're going to work this thing out. We're going to get with Toyota and work it out. In certainness [sic] in their interest to work it out, they want to get their little fee that they were getting. So, there's nothing fraudulent about that. They're trying to work it out. They were unsuccessful in working it out; okay? I don't know if you can prove malice; okay? You're going to have a problem proving malice, intent, and knowledge to defraud. That's the problem with this case. . . . Now, the fact that they turned around and told the Toyota people something maybe something else, that you all were some bad people, you all wasn't paying your bills and all this kind of stuff. I don't know about all that. That's what you say.

. . . .

I'm going to grant the motion for summary judgment in regard to the fraud claim. I don't find that a prescription situation exists;

however, I do find there is some material issue of fact with regards to the attorney's fees for the prosecution of the Federal suit which Scott was not a party to. And I don't find that there's no way that Louisiana Pigment, as I appreciate the fraud law, could prove fraud had I let this case go trial. And in the interest of judicial economy, and costs of the litigant, I'm going to grant the motion for summary judgment.

At the outset, we note that this court has consistently held that subjective facts such as intent, motive, malice, knowledge or good faith are normally inappropriate for a summary judgment determination. *Murphy's Lease & Welding Serv. Inc. v. Bayou Concessions Salvage, Inc.*, 00-978 (La.App. 3 Cir. 3/8/01), 780 So.2d 1284, *writ denied*, 01-1005 (La. 6/1/01), 793 So.2d 195. "However, even though granting a summary judgment based on an intent issue may be rare, it can be done when there is no issue of material fact concerning the pertinent intent." *Carter v. BRMAP*, 591 So.2d 1184, 1189 (La.App. 1 Cir. 1991).

Insofar as the defendants will not bear the burden of proof at trial, we must determine whether they, as the moving parties, have shown the absence of one or more elements essential to LPC's fraud claim. *Meynard v. Pickett Indus., Inc.*, 04-887 (La.App. 3 Cir. 12/15/04), 896 So.2d 126; La.Code Civ.P. art. 966(C)(2).

After reviewing the record, we note that the defendants presented evidence in support of their argument that Cobb did not make any fraudulent statement with regard to fixing the forklift seats. The defendants submitted Cobb's affidavit dated September 20, 2005, in which he outlined the steps that were taken to provide LPC with the desired seats. Although a suspension seat was installed on one of the forklifts, "doing so raised the seat height, causing the lower overhead guard model to be out of compliance with ANSI standards and OSHA regulations." Cobb stated that LPC refused to "execute a waiver form regarding the regulatory noncompliance." When another solution was proposed, LPC declined, stating that it was obtaining

8

replacement forklifts from another vendor. The fact that the defendants agreed to remedy the situation, but were unsuccessful, does not mean that fraud was committed. *See Automatic Coin Enter., Inc. v. Vend-Tronics, Inc.,* 433 So.2d 766, 767-68 (La.App. 5 Cir. 1983)(emphasis added), *writ denied*, 440 So.2d 756 (La.1983) (where the court held that "fraud cannot be imputed from alleged misrepresentation(s) alone but, rather, must be based solely on a person's intent *not* to perform. The general rule is that an action for fraud cannot be asserted based upon statements promissory in nature and relating to future actions.")

In their brief submitted to this court, the defendants allege that Toyota sued LPC because of LPC's refusal to make payments under the lease. The defendants entered into evidence an excerpt from the deposition of Steve Bourdon (Bourdon), Toyota's Territory Finance Manager, referencing a customer contact report, also entered as evidence, prepared by Bourdon when he visited LPC's facility on June 3, 2003, after receiving notice that LPC "decided to return the units as being unsuitable and unsafe for its operations because of the seat." Bourdon wrote in his report that: "I said [Toyota] requires payments as agreed. If they return the units they [sic] obligated to pay all remaining charges, payments and residual value. . . . I explained that I would research their issues, but that all payments needed to be made per the terms of their signed lease agreement."

This report indicates that on June 3, 2003, Toyota advised LPC that even if it returned the forklifts, LPC was still obligated to make the payments pursuant to the lease agreement. Furthermore, a review of the record reveals that on June 27, 2003, Toyota sent a letter to LPC informing it that it was in default of the lease, that Toyota was accelerating all amounts due, and that failure to pay would result in legal action

9

being taken. We note that it was not until August 4, 2003 that Cobb wrote the letter to LPC informing it that Scott had "meet [sic] all requirements and terms of its agreement with [LPC] and that [LPC] is obligated to [Toyota] for the balance due on the referenced forklifts." Given these dates, we find that Toyota's decision to institute suit against LPC for nonpayment was not predicated on the letter Cobb wrote to LPC.

As the defendants have demonstrated the absence of factual support for an element essential to LPC's fraud claim, LPC must "produce factual support sufficient to establish that [it] will be able to satisfy [its] evidentiary burden of proof at trial[.]" La.Code Civ.P. art. 966(C)(2).

After a review of the record, we find that LPC failed to produce factual support sufficient to establish that it would be able to prove its allegation of fraud at trial. Specifically, LPC has not demonstrated that the defendants intended to defraud it or gain an unfair advantage. The exhibits that LPC filed in opposition to summary judgment, particularly excerpts from the depositions of Cobb and various LPC employees, illustrate a willingness on Scott's part to replace the seats on the forklifts with the ones that LPC initially requested. Likewise, Coontz's affidavit provides no support for LPC's fraud allegation as he simply acknowledged that the forklifts had the incorrect seats and that he attempted to have the problem corrected. Further, LPC has not submitted any evidence which proves that in filing its suit against LPC, Toyota relied on statements Cobb wrote in his letter to LPC.

"In conclusion, we find [that LPC's] conjectural allegations of fraud are too speculative." *Shelton v. Standard/700 Associates*, 01-0587, p. 9 (La. 10/16/01), 798 So.2d 60, 67. As no genuine issue of material fact exists, the defendants' motions for summary judgment were properly granted.

*Remaining Assignment of Error*

LPC alleges that the trial court failed to address its claim for an innominate tort cause of action for fraudulently inducing meritless litigation against LPC. After reviewing both LPC's petition and its brief submitted to this court, we note that the same set of facts are used to support LPC's fraud claim and its claim for an innominate tort cause of action. As we have found that LPC has failed to produce factual support that demonstrates that it will be able to meet its burden of proving fraud at trial, we, likewise, find that LPC will be unable to satisfy its evidentiary burden of proof as it relates to this claim. Therefore, this assignment lacks merit.

## DECREE

For the above reasons, the judgment of the trial court granting the defendants' motions for summary judgment is affirmed. All costs of these proceedings are assessed against the plaintiff, Louisiana Pigment Company, L.P.

**AFFIRMED.**

# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 06-1026

**LOUISIANA PIGMENT COMPANY, L.P.**

**VERSUS**

**SCOTT CONSTRUCTION COMPANY, INC., ET AL.**

**GENOVESE, J.**, dissents and assigns written reasons.

Plain and simple, the trial court granted summary judgment on a fraud claim. The majority proposes an affirmation. I disagree and dissent.

This court has consistently held that subjective facts such as intent, motive, malice, knowledge, or good faith are normally inappropriate for a summary judgment determination. *Murphy's Lease & Welding Serv., Inc., v. Bayou Concessions Salvage, Inc.*, 00-978 (La.App. 3 Cir. 3/8/01), 780 So.2d 1284, *writ denied*, 01-1005 (La. 6/1/01), 793 So.2d 195. Such is the case here. LPC filed a fraud and misrepresentation claim against Scott and Toyota. Summary judgment was granted in favor of Scott, et al., on said fraud and misrepresentation claim.

Louisiana Civil Code Article 1953 states that: "Fraud is a misrepresentation or a suppression of the truth made with the *intention* either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." Therefore, "[t]he two elements essential to establishing legal fraud are an *intent* to defraud or gain an unfair advantage and a resulting loss or damage." *Mack v. Evans*, 33,364, p.3 (La.App. 3 Cir. 12/5/01), 804 So.2d 730, 733, *writ denied*, 02-422 (La. 4/19/02), 813 So.2d 1088.

Both plaintiff and defendants presented evidence via deposition and affidavit in opposition to each other's claim. A subjective fact, such as fraudulent intent, is typically inappropriate for resolution by summary judgment. The countervailing evidence presented in this summary judgment certainly creates a genuine issue of

material fact, thereby allowing this case to proceed to trial. When a summary judgment is filed, as in this fraudulent misrepresentation case, the trial court cannot weigh the evidence and resolve issues of fact. Such is the case here. The issue of intent in a fraudulent misrepresentation case is not ripe for summary judgment. Consequently, I dissent from the majority. I would reverse the trial court's grant of summary judgment in favor of the defendants and allow the case to proceed to trial on the merits.